DAVID L. NEALE (SBN 141225)
DANIEL H. REISS (SBN 150573)
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dln@lnbyg.com; dhr@lnbyg.com

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HEALTHY SPOT OPERATING, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:24-bk-20065-DS<br><br>Chapter 11 Case<br><br>**DEBTOR'S MOTION FOR ORDER TO REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY; MEMORANDUM OF POINTS AND AUHORITIES; DECLARATION OF MARK BOONNARK**<br><br>Date: March 25, 2025<br>Time: 1:00 p.m.<br>Place: Courtroom 1639<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, OTHER INTERESTED PARTIES:**

Healthy Spot Operating, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case ("Debtor"), hereby moves the Court by this motion (the "Motion") for the entry of an order authorizing the Debtor to reject the two (2) unexpired non-residential real property leases identified below (collectively, the "Leases," and individually, a "Lease"), and abandon certain fixtures, fittings, furniture, and/or other personal property that may be located at the premises associate with each Lease, with the rejection of Leases and abandonment of the personal property to be effective as of the Effective Date (defined below).[1] The two Leases which are the subject of this Motion are:

| Landlord/Counterparty | Real Property Address |
|---|---|
| 8126 Beverly Properties | 8126 Beverly Blvd., Los Angeles CA 90048 |
| Essex Portfolio, L.P. | 1200 4th St., Suite F, San Francisco CA 94158 |

The Motion is based upon 11 U.S.C. §§ 105(a), 365(a) and 554, Federal Bankruptcy Rule of Procedure 6006, and Local Bankruptcy Rule 9013-1, the attached Memorandum of Points and Authorities and the Declaration of Mark Boonnark annexed hereto, the entire record of Debtor's bankruptcy case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order:

(1) granting the Motion in its entirety;

(2) authorizing the Debtor to reject the Leases, the effective date of which shall be the earlier of (i) the surrender of the respective premises to the respective landlord, which is

[1] Due to the voluminous nature of the Leases which are the subject of this Motion, the Debtor has not attached copies of the Leases to this Motion. However, complete copies of one or more of the Leases will be provided upon written request to counsel for the Debtor, whose contact information is set forth on the upper left corner of the first page of this Motion.

expected to be no later than March 14, 2025 (the "Surrender Date"),[2] or (ii) the hearing date of this Motion (the "Effective Date");

(3) authorizing Debtor to abandon any of its remaining personal property assets located at the premises to which each Lease relates, and that such abandonment be deemed to occur on the Effective Date; and

(4) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: March 4, 2025

HEALTHY SPOT OPERATING, LLC

By: ___*/s/ Daniel H. Reiss*___________
DAVID L. NEALE
DANIEL H. REISS
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11 Debtor and Debtor in Possession

[2] Debtor shall file a supplemental declaration regarding the actual Surrender Date prior to the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION.

Healthy Spot Operating, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case ("Debtor"), filed its voluntary Chapter 11 bankruptcy petition on December 10, 2024 (the "Petition Date").

At core, Debtor is a brick and mortar retailer and its revenues are dependent on the goods sold and services rendered at its twenty retail locations. Although it has an online presence, its online business accounts for less than ten percent of its overall operating revenues. Debtor does not own any real property; rather, all of its retail locations, as well as its warehouse and corporate office space, are all subject to non-residential real estate leases.

In connection with its efforts to maximize profitability and efficiencies, and to trim operating costs, Debtor has determined that rejection of certain of its leases is in the best interests of this bankruptcy estate and its creditors. The below table lists those of Debtor's non-residential real property leases which are the subject of this Motion (the "Leases"). For the reasons set forth below, Debtor seeks an order rejecting the Leases pursuant to 11 U.S.C. § 365(a).

Further, although the Debtor believes that it will remove all or substantially all of the estate's personal property assets (the "Remaining Personal Property") located at the premises which are the subject of the Leases (the "Closing Stores"), in an abundance of caution, Debtor seeks authority to abandon any such Remaining Personal Property that remain at the Closing Stores pursuant to 11 U.S.C. § 554(a). The reason for this abandonment is that Debtor believes that the costs associated with liquidating any Remaining Personal Property at the Closing Stores will likely approach or exceed the value of such assets, and the abandonment will not pose a threat to public health, safety, or welfare. Accordingly, Debtor believes that the Remaining Personal Property at the Closing Stores, if any, has inconsequential value to Debtor's estate and should be abandoned as requested herein.

## II.

## STATEMENT OF FACTS.

### A. Background.

Debtor is a comprehensive pet care retail business which, as of the Petition Date, had a network of 20 retail stores in premier locations across Southern and Northern California, as well as a growing e-commerce channel. Debtor's focus is on fostering healthy pet lifestyles. Each of Debtor's stores provides a suite of best-in-class services, including pet grooming, daycare, nutrition consulting, dental cleaning and dog training classes, aiming to cater to the complete spectrum of client needs in pet care. Debtor specializes in a curated offering of pet care products, including an extensive selection of wholesome and organic food options, environmentally-friendly toys, treats, training aids, grooming supplies, and its private label offering, Mind Body Bowl. Debtor has established itself as a benchmark brand for pet services and retail, and is able to command industry leading average purchase per customer, basket size, margins, and customer loyalty by leveraging the synergy of daily need services and consumables like grooming and pet food.

Along with the retail locations, Debtor has also developed a growing direct-to-consumer ecommerce and wholesale business with its private label brand Mind Body Bowl, which speaks to the same holistic approach to pet health and care embodied in the stores. Mind Body Bowl is currently on shelf in 400+ grocery stores including Erewhon, Gelsons, and Bristol Farms. This serves to further monetize the brand as well as extend the brand reach geographically and demographically. Gross annual sales are approximately $41 million, and Debtor has approximately 310 employees.

### B. Debtor's Post-Petition Activities and Operations.

As reflected in the Court record, this bankruptcy case was precipitated by the acts of one or more purported secured creditors that caused an nearly complete cessation of Debtor's cash flows.[3] One purported secured creditor, Instafunding LLC aka TVT SPVL ("Instafunding") filed

---

[3] A detailed background of Debtor and the reasons for this bankruptcy case is set forth in the

an alleged "confession of judgment" in Utah State court on December 3, 2024, and immediately took steps to enforce such judgment aggressively, even prior to its entry by the Utah State Court.[4] In addition, Instafunding - which filed a UCC-1 against Debtor solely (and improperly) in California[5] - sent a notice of its purported lien to Debtor's merchant credit card processor TSYS Merchant Solutions, LLC dba Global Payments on or about December 3 or 4, 2024. This improper notice of lien caused all of Debtor's cash flow from credit card purchases to cease. This was devastating to Debtor's operations as in excess of 95% of its operating revenues come from its credit card sales. Therefore, Debtor was placed in the difficult position of having to file an emergency bankruptcy petition as the holiday season was already underway.

Since the Petition Date, due to Instafunding's heavy-handed tactics and the emergency nature of Debtor's bankruptcy filing, Debtor has been involved with myriad tasks outside of its ordinary course of business. Debtor's management was tasked with all of the burdensome administrative tasks that are attendant to the commencement and prosecution of a chapter 11 case. At the very beginning of the case, Debtor had to obtain a Court order granting use of cash collateral, and to also "unfreeze" the approximately $1.5 million held by its merchant credit card processor that had been withheld from Debtor due to Instafunding's strong-arm tactics. In addition, Debtor's limited management resources were absorbed with dealing with vendors and various business partners concerned about the sudden and unexpected bankruptcy case filing. Debtor's management also had to attend to its workforce of over 300 employees to ensure high morale was maintained in Debtor's retail workforce through the holidays.

Debtor's post-petition efforts have been highly successful and effective to date. Debtor has obtained orders from this Court relating to its unique cash management needs, authority to use cash collateral, and issues relating to payment of utility deposits and priority wages. Further,

---

Omnibus Declaration of Mark Boonnark in Support of Emergency Motions filed on December 11, 2024 (Dkt. No. 9).

[4] Notably, the Debtor did not sign a confession of judgment with respect to amounts purportedly to owed to Instafunding; therefore, Debtor disputes the validity of such a confession of judgment if it was entered by the Utah state court.

[5] Debtor is a Delaware limited liability company.

Debtor's administrative staff has dealt with numerous case administration tasks, including, among others: (1) compliance with the operating requirements under the Bankruptcy Code, Bankruptcy Rules, and the Guidelines of the United States Trustee (the "UST"), (2) preparing the 7-Day Package for submission to the UST and gathering documents and information related thereto, (3) transitioning from pre-petition to post-petition banking relationships; (4) preparing monthly operating reports, all amidst operating Debtor's business in a competitive environment. Debtor also has had to deal with the unexpected business challenge posed by the recent fires throughout Los Angeles County, which adversely impacted multiple of Debtor's retail locations.

Nonetheless, and despite these hurdles, Debtor has maintained its focus on options for successfully emerging from this chapter 11 case. Most recently, Debtor has determined that a sale of its operating assets as a going concern is likely in the best interests of the bankruptcy estate and creditors, and is currently engaged in negotiations with multiple parties and varying stages regarding such a sale. It is anticipated that Debtor will file a motion to approve the terms of the sale of all or substantially all of Debtor's assets in the coming weeks.

Debtor is implementing strategies to increase sales and improve operating efficiencies which will benefit any buyer of the Debtor's operating assets, and which could also form the basis for an exit from this case through a chapter 11 plan of reorganization based on operations if a sale with satisfactory terms does not occur in a timely fashion. In connection with these efforts, Debtor is in the process of reviewing each of its non-residential property lease to determine whether assumption or rejection is most beneficial for Debtor, the bankruptcy estate and creditors.

Based on Debtor's review and analysis, Debtor has determined that the rejection of the two leases listed in the below table (the "Leases") will be beneficial to its reorganization efforts:

| **Landlord/Counterparty** | **Real Property Address** |
|---|---|
| 8126 Beverly Properties | 8126 Beverly Blvd., Los Angeles CA 90048 |
| Essex Portfolio, L.P. | 1200 4th St., Suite F, San Francisco CA 94158 |

Debtor expects that a substantial amount of the customers at the Closing Stores which are the subject of the Leases will be loyal to Debtor's products and services and will continue to purchase products and services at other retail stores where Debtor will maintain operations. Overall, Debtor believes that rejection of the Leases will reduce the costs associated with the Closing Stores without a marked decrease in overall sales revenue, thereby increasing profitability of the Debtor's operations. Therefore, rejection of the Leases is in the best interests of the bankruptcy estate and creditors.

## III.

## DISCUSSION.

### A. Rejection of the Leases for the Closing Stores is an Appropriate Exercise of Debtor's Business Judgment and Should be Approved.

Barring certain exceptions not herein relevant, Section 365(a) of the Bankruptcy Code authorizes a debtor in possession, "subject to the Court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor." A debtor in possession may assume or reject executory contracts for the benefit of the estate. *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir.1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996). In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); *see also In re Gucci, supra*, 193 B.R. at 415; *NLRB v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir.1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."). The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice. *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr.S.D.Fla.1991), *citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir.1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *see*

*also In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr.D.Del.2001). "In making its determination, a bankruptcy court need engage in 'only a cursory review of a [debtor's] decision to reject the contract. Specifically, a bankruptcy court applies the business judgment rule to evaluate a [debtor's] rejection decision." *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir.2007).

Debtor has determination that continued operations at the Closing Stores adversely impact Debtor's profitability, and that each day that such Closing Stores remain open are detrimental to Debtor's operations. As such, to preserve the value of Debtor's ongoing operations, to conserve the Debtor's resources and cash, and maximize the Debtor's ability to successfully reorganize, Debtor has determined that rejection of the Leases is in the best interests of the estate.

Additionally, Debtor has determined that the cost to the Debtor of continuing to occupy the Closing Stores, and of performing its obligations under the Leases for the Closing Stores and incurring unnecessary administrative expenses, is burdensome, and that rejection of the Leases for the Closing Stores is therefore in the best interests of the Debtor's estate and creditors.

For all of the reasons set forth above, the Debtor submits that rejection of the Leases for the Closing Stores, in accordance with the terms and conditions set forth herein, is in the best interests of the Debtor's bankruptcy estate and based on sound and reasonable business judgment.

**B. Rejection Should Be Ordered Effective as of the Proposed Effective Date.**

The Ninth Circuit permits bankruptcy courts to exercise equitable power to order that lease rejection operate retroactively. *Pacific Shores Development, LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065 (9th Cir.2004). The four factors to consider when exercising this equitable power are: (1) the immediate filing of the debtor's motion to reject the leases; (2) the debtor's prompt action in setting the motion for hearing; (3) whether the debtor has occupied or vacated the premises; and (4) the landlord's motives in opposing (if at all) retroactive effect of rejection. *Id.* at 1072. Here: (1) Debtor filed this Motion within approximately one week of Debtor's final decision to reject the Leases. Therefore, the Motion was filed as soon as practicable after Debtor's decision; (2) Debtor has set the hearing on the

Motion on the first available hearing date on the Court's self-calendaring system; (3) Debtor expects to vacate and surrender the premises of each of the Leases (the "Surrender Date") no later than March 14, 2025, and (4) unless and until a landlord objects, Debtor knows of no motivation by the landlords contrary to retroactive rejection. Debtor shall file a supplemental declaration prior to the hearing with respect to the Surrender Date for each of the Leases. Therefore, the Debtor shall have established adequate grounds to order that rejection of the Leases shall be effective as of the Surrender Date.

To preserve the Debtor's going concern value and eliminate unnecessary costs of operations, particularly post-petition administrative expenses for leases that serve no purpose or benefit for the estate, the Debtor respectfully submits that the Court should order that the Leases are deemed rejected no later than the earlier of (i) the Surrender Date or (ii) the hearing date of this Motion (the "Effective Date").

### C. Abandonment of The Remaining Personal Property is in the Best Interests of the Estate.

The Debtor believes that it will remove all owned personal property assets (the "Remaining Personal Property") located at the Closing Stores as of the Petition Date. However, out of an abundance of caution and solely to the extent that the Debtor retained (or retains) any ownership interest in any Remaining Personal Property, the Debtor seeks authority to abandon any Remaining Personal Property that remain at the Closing Stores as of the Petition Date.

The Debtor seeks to abandon any Remaining Personal Property described above as is, where is, and in accordance with section 554(a) of the Bankruptcy Code. Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon property is extensive and almost unfettered so long as it will not contravene laws designed to protect public health and safety or pose an imminent threat to the public's welfare. *In re Midlantic Bank*, 474 U.S. 494, 501 (1986). Abandonment is meant

to expeditiously save resources of the estate for more efficient and equitable distribution. *In re Smith Douglass, Inc.*, 856 F.2d 12, 16 (4th Cir.1988).

The Debtor believes that the costs associated with liquidating any Remaining Personal Property at the Closing Stores will likely approach or exceed the value of such assets, and the abandonment will not pose a threat to public health, safety, or welfare. Accordingly, the Debtor believes that the Remaining Personal Property at the Closing Stores, if any, have inconsequential value to the Debtor's estate and should be abandoned as requested herein.

**D. Compliance with Federal Rule of Bankruptcy Procedure 6006.**

The Debtor is permitted to seek the rejection of multiple leases in a single motion subject to six requirements. FED.R.BANKR.P. 6006(f). This Motion complies with Federal Rule 6006(f) as the landlords or provided by this Motion with the following information: (1) stating in a conspicuous place where the landlords can locate their names and leases; (2) listing the parties alphabetically and identifying corresponding leases; (3) specifying the terms, including the curing of defaults, for each requested assumption or assignment [not applicable here, as the Motion seeks only rejection of leases]; (4) specifying the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment [not applicable here, as the Motion seeks only rejection of leases]; (5) numbering consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases [this is the first such motion]; and (6) being limited to no more than 100 executory contracts or unexpired leases.

**IV.**

**CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that this Court hold an emergency hearing on the Motion and enter an Order:

(1) Granting the Motion in its entirety;

(2) Authorizing the Debtor to reject the Leases, which shall be deemed to occur on the Effective Date;

(3) Authorizing the Debtor to abandon any of its remaining personal property assets located at the premises to which each Lease relates, and that such abandonment be deemed to occur on the Effective Date; and

(4) Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: March 4, 2025

HEALTHY SPOT OPERATING, LLC

By: ___*/s/ Daniel H. Reiss*___________
DAVID L. NEALE
DANIEL H. REISS
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

**DECLARATION OF MARK BOONNARK**

I, Mark Boonnark, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I serve as the chief executive officer of Healthy Spot Operating, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"). I have personal knowledge of the facts set forth herein, and, if called as a witness, I would testify competently with respect thereto.

3. I have reviewed and am familiar with and am knowledgeable about the books and records of Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded. I make this declaration in support of the annexed Motion. Unless otherwise indicated, the capitalized terms herein shall have the same meaning herein as in the Motion.

4. Debtor is a comprehensive pet care retail business which, as of the Petition Date, had a network of 20 retail stores in premier locations across Southern and Northern California, as well as a growing e-commerce channel. Debtor's focus is on fostering healthy pet lifestyles. Each of Debtor's stores provides a suite of best-in-class services, including pet grooming, daycare, nutrition consulting, dental cleaning and dog training classes, aiming to cater to the complete spectrum of client needs in pet care. Debtor specializes in a curated offering of pet care products, including an extensive selection of wholesome and organic food options, environmentally-friendly toys, treats, training aids, grooming supplies, and its private label offering, Mind Body Bowl. Debtor has established itself as a benchmark brand for pet services and retail, and is able to command industry leading average purchase per customer, basket size, margins, and customer loyalty by leveraging the synergy of daily need services and consumables like grooming and pet food.

5. Along with the retail locations, Debtor has also developed a growing direct-to-consumer ecommerce and wholesale business with its private label brand Mind Body Bowl, which speaks to the same holistic approach to pet health and care embodied in the stores. Mind Body Bowl is currently on shelf in 400+ grocery stores including Erewhon, Gelsons, and Bristol Farms. This serves to further monetize the brand as well as extend the brand reach geographically and demographically. Gross annual sales are approximately $41 million, and Debtor has approximately 310 employees.

6. As reflected in the Court record, this bankruptcy case was precipitated by the acts of one or more purported secured creditors that caused an nearly complete cessation of Debtor's cash flows.[6] One purported secured creditor, Instafunding LLC aka TVT SPVL ("Instafunding") filed an alleged "confession of judgment" in Utah State court on December 3, 2024, and immediately took steps to enforce such judgment aggressively, even prior to its entry by the Utah State Court.[7] In addition, Instafunding - which filed a UCC-1 against Debtor solely (and improperly) in California[8] - sent a notice of its purported lien to Debtor's merchant credit card processor TSYS Merchant Solutions, LLC dba Global Payments on or about December 3 or 4, 2024. This improper notice of lien caused all of Debtor's cash flow from credit card purchases to cease. This was devastating to Debtor's operations as in excess of 95% of its operating revenues come from its credit card sales. Therefore, Debtor was placed in the difficult position of having to file an emergency bankruptcy petition as the holiday season was already underway.

7. Since the Petition Date, due to Instafunding's heavy-handed tactics and the emergency nature of Debtor's bankruptcy filing, Debtor has been involved with myriad tasks outside of its ordinary course of business. Debtor's management was tasked with all of the

[6] A detailed background of Debtor and the reasons for this bankruptcy case is set forth in the Omnibus Declaration of Mark Boonnark in Support of Emergency Motions filed on December 11, 2024 (Dkt. No. 9).
[7] Notably, the Debtor did not sign a confession of judgment with respect to amounts purportedly to owed to Instafunding; therefore, Debtor disputes the validity of such a confession of judgment if it was entered by the Utah state court.
[8] Debtor is a Delaware limited liability company.

burdensome administrative tasks that are attendant to the commencement and prosecution of a chapter 11 case. At the very beginning of the case, Debtor had to obtain a Court order granting use of cash collateral, and to also “unfreeze” the approximately $1.5 million held by its merchant credit card processor that had been withheld from Debtor due to Instafunding's strong-arm tactics. In addition, Debtor’s limited management resources were absorbed with dealing with vendors and various business partners concerned about the sudden and unexpected bankruptcy case filing. Debtor’s management also had to attend to its workforce of over 300 employees to ensure high morale was maintained in Debtor’s retail workforce through the holidays.

8. Debtor's post-petition efforts have been highly successful and effective to date. Debtor has obtained orders from this Court relating to its unique cash management needs, authority to use cash collateral, and issues relating to payment of utility deposits and priority wages. Further, Debtor’s administrative staff has dealt with numerous case administration tasks, including, among others: (1) compliance with the operating requirements under the Bankruptcy Code, Bankruptcy Rules, and the Guidelines of the United States Trustee (the “UST”), (2) preparing the 7-Day Package for submission to the UST and gathering documents and information related thereto, (3) transitioning from pre-petition to post-petition banking relationships; (4) preparing monthly operating reports, all amidst operating Debtor's business in a competitive environment. Debtor also has had to deal with the unexpected business challenge posed by the recent fires throughout Los Angeles County, which adversely impacted multiple of Debtor's retail locations.

9. Nonetheless, and despite these hurdles, Debtor has maintained its focus on options for successfully emerging from this chapter 11 case. Most recently, Debtor has determined that a sale of its operating assets as a going concern is in the best interests of the bankruptcy estate and creditors, and is currently engaged in negotiations with multiple parties and varying stages regarding such a sale. It is anticipated that Debtor will have filed a motion to approve the terms of the sale of all or substantially all of Debtor's assets in the coming weeks.

10. Debtor is implementing strategies to increase sales and improve operating efficiencies which will benefit any buyer of the Debtor's operating assets, and which could also form the basis for an exit from this case through a chapter 11 plan of reorganization based on operations if a sale with satisfactory terms does not occur in a timely fashion. In connection with these efforts, Debtor is in the process of reviewing each of its non-residential property lease to determine whether assumption or rejection is most beneficial for Debtor, the bankruptcy estate and creditors.

11. Based on Debtor's review and analysis, Debtor has determined that the rejection of the two leases listed in the below table (the "Leases") will be beneficial to its reorganization efforts:

| **Landlord/Counterparty** | **Real Property Address** |
|---|---|
| 8126 Beverly Properties | 8126 Beverly Blvd., Los Angeles CA 90048 |
| Essex Portfolio, L.P. | 1200 4th St., Suite F, San Francisco CA 94158 |

12. Debtor expects that a substantial amount of the customers at the locations which are the subject of the Leases (the "Closing Stores") will be loyal to Debtor's products and services and will continue to purchase products and services at other retail stores where Debtor will maintain operations. Overall, Debtor believes that rejection of the Leases will reduce the costs associated with the Closing Stores without a marked decrease in overall sales revenue, thereby increasing profitability of Debtor's operations. Debtor's determination was made after much study of each of its leases, the profitability of each location, the impact of closing a location on the overall profitability of Debtor's operations. Therefore, rejection of the Leases is in the best interests of the bankruptcy estate and creditors.

13. Debtor has determined that continued operations at the Closing Stores adversely impact Debtor's profitability, and that each day that such Closing Stores remain open are detrimental to Debtor's operations. As such, to preserve the value of Debtor's ongoing operations, to conserve the Debtor's resources and cash, and maximize the Debtor's ability to successfully reorganize, Debtor has determined that rejection of the Leases is in the best interests of the estate.

14. The annexed Motion was filed within approximately one week of Debtor's final decision to reject the Leases. Therefore, the Motion was filed as soon as practicable after Debtor's decision and set for hearing on the soonest hearing available on the Court's self-calendaring system.

15. Debtor believes that the costs associated with liquidating any Remaining Personal Property at the Closing Stores will likely approach or exceed the value of such assets, and the abandonment will not pose a threat to public health, safety, or welfare. Accordingly, the Debtor believes that the Remaining Personal Property at the Closing Stores, if any, have inconsequential value to the Debtor's estate and should be abandoned as requested herein.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 4th day of March 2025, at Los Angeles, California.

MARK BOONNARK

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **DEBTOR'S MOTION FOR ORDER TO REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY; MEMORANDUM OF POINTS AND AUHORITIES; DECLARATION OF MARK BOONNARK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 4, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jonathan Arias jarias@zwickerpc.com
- Todd M Arnold tma@lnbyg.com
- Jamie Altman Buggy jbuggy@harvestllp.com, jkeatingwolk@harvestllp.com,atenreiro@harvestllp.com
- Robert Carrasco rmc@lnbyg.com, rmc@lnbyg.com
- Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- Ivo Keller ikeller@sflaw.com, calendar@sflaw.com
- Sweeney Kelly kelly@ksgklaw.com
- Elizabeth S Lynch blynch@chinnery.com
- Noreen A Madoyan Noreen.Madoyan@usdoj.gov
- Stephen Malkiewicz stephen.malkiewicz@cintas.com
- Jean Pierre Nogues jpn@msk.com
- Abe G Salen asalen@wzllp.com, kmartin@wzllp.com,ddouglas@wzllp.com
- Daren M Schlecter daren@schlecterlaw.com, assistant@schlecterlaw.com
- Gary A Starre gastarre@gmail.com, mmoonniiee@gmail.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **March 4, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 4, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 4, 2025 | D. Woo | /s/ D. Woo |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

614 E. Col Properties
2834 W. Imperial Hwy
Inglewood, CA 90303

8126 Beverly Properties LLC
Arash Danialifar
2834 W. Imperial Hwy
Inglewood, CA 90303

8525 Santa Monica Blvd LLC
710 N. Oakhurst Drive
Beverly Hills, CA 90210

Allen C. Dennis Trustee
5500 Rhodes Avenue
Valley Village, CA 91607

American Commercial Equities Three
22917 Pacific Coast Hwy., St 300
Malibu, CA 90265

Century City Mall LLC - Westfield
2049 Century Park East, 41st Floor
Los Angeles, CA 90067

East of June LLC
8900 Melrose Ave Suite 201
West Hollywood, CA 90069

Essex Portfolio L.P.
1100 Park Place Suite 200
San Mateo, CA 94403

Industrious LS Hughes District LLC
6600 Center Drive 10th Floor
Los Angeles, CA 90045

Ivy Station Residential LLC
11777 San Vicente Blvd Suite 900
Los Angeles, CA 90049

KB Properties
PO Box 2248
Mill Valley, CA 94942

Koenig Family Properties LLC
P.O Box 8482
Santa Cruz, CA 95061

Mamo LBMP Investors I LLC
PO Box 209427
Austin, TX 78720

Michael Quagletti Trust
2300 Garfield Avenue
Los Angeles, CA 90064

MSQ LLC
13160 Mindanao Way
Marina del Rey, CA 90292

1000 Grand Avenue Holdings, LLC.
Hanover Grand LLC
450 West Olympic
Los Angeles, CA 90015

Radbert and Diana Chin
P.O. Box 9440
Fresno, CA 93792

Runway Owners LLC
12775 W Millenium, Suite 165
Playa Vista, CA 90094

Sepulveda Blvd Prop. LLC - Skechers
225 S Sepulveda Blvd
Manhattan Beach, CA 90266

Silver Ridge Plaza
2760 E. Spring St, Suite 200
Long Beach, CA 90806

Walnut Square Center LP
468 Green St.
San Francisco, CA 94133

West Valley Owner LLC
2049 Century Park East, 41st Floor
Los Angeles, CA 90067