DAVID L. NEALE (SBN 141225)
DANIEL H. REISS (SBN 150573)
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dln@lnbyg.com; dhr@lnbyg.com

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HEALTHY SPOT OPERATING, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:24-bk-20065-DS<br><br>Chapter 11 Case<br><br>**DEBTOR'S MOTION FOR ORDER EXTENDING TIME TO ASSUME OR REJECT UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES; MEMORANDUM OF POINTS AND AUHORITIES; DECLARATION OF MARK BOONNARK**<br><br>Date: July 3, 2025<br>Time: 1:00 p.m.<br>Place: Courtroom 1639<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:**

Healthy Spot Operating, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case ("Debtor"), hereby moves the Court, by this motion (the "Motion"), for the entry of an order pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code, extending the deadline for Debtor, to assume or reject its nonresidential real property leases listed on **Exhibit A** hereto (the "Leases") ninety (90) days, through and including October 6, 2025. Debtor reserves the right to delete any of the Leases from the list prior to the hearing on this Motion based on the circumstances of this case.

This Motion is based upon the annexed Memorandum of Points and Authorities, the annexed Declaration of Mark Boonnark, the record in this case, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing on the Motion.

**WHEREFORE**, Debtor respectfully requests that the Court enter an order pursuant to Bankruptcy Code Section 365(d)(4)(B)(ii) extending the deadline for Debtor to assume or reject the Leases by ninety (90) days through and including October 6, 2025.

Dated: June 6, 2025

HEALTHY SPOT OPERATING, LLC

By: ___*/s/ Daniel H. Reiss*___
DAVID L. NEALE
DANIEL H. REISS
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11 Debtor and Debtor in Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION.**

Healthy Spot Operating, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), filed its voluntary Chapter 11 bankruptcy petition on December 10, 2024 (the "Petition Date").

At core, Debtor is a brick and mortar retailer and its revenues are dependent on the goods sold and services rendered at its retail locations. Although it has an online presence, its online business accounts for less than ten percent of its overall operating revenues. Debtor does not own any real property; rather, all of its retail locations, as well as its warehouse and corporate office space, are all subject to non-residential real estate leases (collectively, the "Leases"). Annexed hereto is **Exhibit A** is a list of all of Debtor's Leases which are the subject of this Motion. This is Debtor's second request of an extension of time within which it may assume or reject the Leases. By order entered on March 26, 2025, the Court granted Debtor a 90-day extension of time to assume or reject the Leases under Bankruptcy Code Section 365(d)(4)(B). to and including July 8, 2025 (Dkt. No. 127) (the "First Extension Order"). As set forth below, Debtor expects to assume and assign some or all of the Leases to a third party as part of a sale of substantially all of Debtor's assets; however, Debtor believes that the transaction will not close prior July 8, 2025.

As shown herein, cause exists for this Court to grant Debtor's motion to extend the deadline to assume or reject the Leases for 90 days, from July 8, 2025 to and including October 6, 2025, under Section 365(d)(4)(B)(ii) of the Bankruptcy Code.

**II.**

**STATEMENT OF FACTS.**

**A. Background.**

Debtor is a comprehensive pet care retail business which, as of the Petition Date, had a network of 20 retail stores in premier locations across Southern and Northern California, as well

as a growing e-commerce channel. Debtor's focus is on fostering healthy pet lifestyles. Each of Debtor's stores provides a suite of best-in-class services, including pet grooming, daycare, nutrition consulting, dental cleaning and dog training classes, aiming to cater to the complete spectrum of client needs in pet care. Debtor specializes in a curated offering of pet care products, including an extensive selection of wholesome and organic food options, environmentally-friendly toys, treats, training aids, grooming supplies, and its private label offering, Mind Body Bowl. Debtor has established itself as a benchmark brand for pet services and retail, and is able to command industry leading average purchase per customer, basket size, margins, and customer loyalty by leveraging the synergy of daily need services and consumables like grooming and pet food.

Along with the retail locations, Debtor has also developed a growing direct-to-consumer ecommerce and wholesale business with its private label brand Mind Body Bowl, which speaks to the same holistic approach to pet health and care embodied in the stores. Mind Body Bowl is currently on shelf in 400+ grocery stores including Erewhon, Gelsons, and Bristol Farms. This serves to further monetize the brand as well as extend the brand reach geographically and demographically. Gross annual sales are approximately $41 million, and Debtor has approximately 300 employees.

**B. Debtor's Post-Petition Activities and Operations.**

As reflected in the Court record, this bankruptcy case was precipitated by the acts of one or more purported secured creditors that caused a nearly complete cessation of Debtor's cash flows.[1] One purported secured creditor, Instafunding LLC aka TVT SPVL ("Instafunding") filed an alleged "confession of judgment" in Utah State court on December 3, 2024, and immediately took steps to enforce such judgment aggressively, even prior to its entry by the Utah State Court. In addition, Instafunding sent a notice of its purported lien to Debtor's merchant credit card processor TSYS Merchant Solutions, LLC dba Global

---

[1] A detailed background of Debtor and the reasons for this bankruptcy case is set forth in the Omnibus Declaration of Mark Boonnark in Support of Emergency Motions filed on December 11, 2024 (Dkt. No. 9).

Payments on or about December 3 or 4, 2024. This notice of lien caused all of Debtor's cash flow from credit card purchases to cease. This was devastating to Debtor's operations as in excess of 95% of its operating revenues come from its credit card sales. Therefore, Debtor was placed in the difficult position of having to file an emergency bankruptcy petition as the holiday season was already underway.

Since the Petition Date, due to Instafunding's heavy-handed tactics and the emergency nature of Debtor's bankruptcy filing, Debtor was involved with myriad tasks outside of its ordinary course of business. Debtor's management was tasked with all of the burdensome administrative tasks that are attendant to the commencement and prosecution of a chapter 11 case. At the very beginning of the case, Debtor had to obtain a Court order granting use of cash collateral, and to also "unfreeze" the approximately $1.5 million held by its merchant credit card processor that had been withheld from Debtor due to Instafunding's strong-arm tactics. In addition, Debtor's limited management resources were absorbed with dealing with vendors and various business partners concerned about the sudden and unexpected bankruptcy case filing. Debtor's management also had to attend to its workforce of approximately 300 employees to ensure high morale was maintained in Debtor's retail workforce through the holidays.

Debtor's post-petition efforts have been aimed at stabilizing the company's operations and remain as a going concern despite the challenges of this chapter 11 bankruptcy, unexpected events such as the recent Los Angeles fires, and competitive business environment. Debtor has obtained orders from this Court relating to its unique cash management needs, authority to use cash collateral, and issues relating to payment of utility deposits and priority wages. Further, Debtor's administrative staff has dealt with numerous case administration tasks, including, among others: (1) compliance with the operating requirements under the Bankruptcy Code, Bankruptcy Rules, and the Guidelines of the United States Trustee (the "UST"), (2) preparing the 7-Day Package for submission to the UST and gathering documents and information related thereto, (3) transitioning from pre-petition to

post-petition banking relationships; (4) preparing monthly operating reports, all amidst operating Debtor's business in a competitive environment. As mentioned, Debtor also had to deal with the unexpected business challenges posed by the recent fires throughout Los Angeles County, which adversely impacted multiple of Debtor's retail locations.

Nonetheless, Debtor maintained its focus on options for successfully emerging from this chapter 11 case. Since the Petition Date, Debtor implemented various strategies to increase sales and improve operating efficiencies. Unfortunately, despite Debtor’s best efforts, Debtor is now experiencing significant negative operating cash flows and its ability to remain a going concern is highly questionable. As set forth in the *Revised Cash Collateral Budget* filed with this Court on April 28, 2025 [Dkt. No. 136], it is anticipated that Debtor will have a *negative* cash balance of approximately $379,000 for the week of June 30, 2025. Therefore, Debtor has determined that a sale of its operating assets as a going concern will maximize the value of the bankruptcy estate and is the best interests of creditors and other parties in interest.

Debtor anticipates that it will file a motion to approve the terms of the sale of all or substantially all of Debtor's assets concurrently with this Motion or shortly thereafter. Therefore, Debtor has determined that a sale of its operating assets as a going concern will maximize the value of the bankruptcy estate and is the best interests of creditors and other parties in interest.

**C. Leases.**

Due to imminent sale of Debtor’s assets and the assumption and assignment of the Leases which is an integral and indispensable part of that sale transaction, a third-party buyer will make its own independent decision as to which of Debtor's retail locations it will continue in operation. However, Debtor does not know at this time whether the proposed sale will be final and/or closed prior to the current July 8, 2025 deadline by which Debtor must assume the Leases. Consequently, Debtor requires additional time to within which it can assume (or reject) the Leases. Therefore, Debtor submits that cause exists for a 90-day extension of the deadline to assume or reject the Leases under Section 365(d)(4)(B)(ii) to October 6, 2025.

**D. Landlord Consent.**

Debtor understands that it is necessary to obtain written consent from the Landlords in order to obtain the extension of time requested herein. It is anticipated that such consents shall be provided by way of supplemental declaration prior to the hearing on this Motion.

**III.**

**<u>ARGUMENT</u>.**

Bankruptcy Code section 365(d)(4) provides, in pertinent part:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> (i) the date that is 120 days after the date of the order for relief; or
>
> (ii) the date of the entry of an order confirming a plan.
>
> (B)
>
> (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
>
> (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11 U.S.C. § 365(d)(4)(A)-(B).

The Bankruptcy Code sets a deadline of 120 days after the petition date for a debtor to assume or to reject unexpired nonresidential real property leases. 11 U.S.C. § 365(d)(4)(A)(i). Because Debtor filed its petition on December 10, 2024, the 120-day period expired on April 9, 2025. Debtor obtained a ninety (90) day extension by the First Extension Order to and including July 8, 2025. Debtor now requests that the Court extend the deadline to assume or reject the Leases for an additional 90 days to October 6, 2025 for the reasons stated herein.

Although the decision to extend a debtor's time to assume or reject unexpired leases of nonresidential real property is generally within the sound discretion of the Court, in determining whether cause exists to extend this time period, courts have relied on several factors, including whether a lease is "a primary asset of the debtor," "the lessor continues to receive rental payments and whether the debtor fails to pay the rent reserved in the lease," "the debtor has had time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan," and "[a]ny other factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease." *In re Muir Training Technologies, Inc.*, 120 B.R. 154, 158-59 (Bankr. S.D. Cal. 1990); *see also In re R. Ring Enters.*, No. 08-44903 (EDJ), 2009 Bankr. LEXIS 685, *8 (Bankr. N.D. Cal. Feb. 19, 2009) "bankruptcy courts, as courts of equity 'are compelled to disfavor a lease forfeiture'" (quoting *In re Victoria Station*, 840 F.2d 682, 684 (9th Cir. 1988))).

As stated above, due to imminent sale of Debtor's assets and the assumption and assignment of the Leases which is an integral and indispensable part of that sale transaction, a third-party buyer will make its own independent decision as to which of Debtor's retail locations will continue operating and which ones will not. However, Debtor does not believe that the proposed sale will be final and/or closed prior to the current July 8, 2025 deadline by which Debtor must assume and assign the Leases. Consequently, Debtor requires additional time to within which it can assume (or reject) the Leases. Therefore, Debtor submits that a 90-day extension of the deadline to assume or reject the Leases Section 365(d)(4)(B)(ii) to October 6, 2025 is in the best interests of the estate. Further Debtor will provide written consents to the requested extension prior to the hearing on this Motion for each of the Leases for which an extension will be requested.

Under these circumstances, Debtor respectfully submits that it is in the best interests of the estate to grant an extension of time to assume or reject the Leases to and including October 6, 2025.

## IV.

## CONCLUSION.

**WHEREFORE**, Debtor respectfully requests that the Court enter an order pursuant to Bankruptcy Code section 365(d)(4)(B)(ii) extending the deadline for Debtor to assume or reject any nonresidential real property leases by ninety (90) days, through and including October 6, 2025.

Dated: June 6, 2025

HEALTHY SPOT OPERATING, LLC

By: *___/s/ Daniel H. Reiss_____________*
DAVID L. NEALE
DANIEL H. REISS
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11 Debtor and Debtor in Possession

**DECLARATION OF MARK BOONNARK**

I, Mark Boonnark, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I serve as the chief executive officer of Healthy Spot Operating, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor") I have personal knowledge of the facts set forth herein, and, if called as a witness, I would testify competently with respect thereto.

3. I have reviewed and am familiar with and am knowledgeable about the books and records of Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

4. Debtor is a brick and mortar retailer and its revenues are dependent on the goods sold and services rendered at its twenty retail locations. Although it has an online presence, its online business accounts for less than ten percent of its overall operating revenues. Debtor does not own any real property; rather, all of its retail locations, as well as its warehouse and corporate office space are all subject to non-residential real estate leases (collectively, the "Leases"). Despite the importance of the Leases to Debtor's ongoing business operations, Debtor has not had the opportunity to reach a final decision with respect to the disposition of the Leases. Annexed hereto is **Exhibit A** is a list of all of Debtor's Leases which is the subject of the annexed motion by debtor to extend the time to assume or reject the Leases in this bankruptcy case.

5. Debtor is a comprehensive pet care retail business that boasts a network of 20 retail stores in premier locations across Southern and Northern California, as well as a growing e-commerce channel. Debtor's focus is on fostering healthy pet lifestyles.

6. Debtor's stores provide a suite of best-in-class services, including pet grooming, daycare, nutrition consulting, dental cleaning and dog training classes, aiming to cater to the

complete spectrum of client needs in pet care. Debtor specializes in a curated offering of pet care products, including an extensive selection of wholesome and organic food options, environmentally-friendly toys, treats, training aids, grooming supplies, and its private label offering, Mind Body Bowl. Debtor has established itself as a benchmark brand for pet services and retail, and is able to command industry leading average purchase per customer, basket size, margins, and customer loyalty by leveraging the synergy of daily need services and consumables like grooming and pet food.

7. Along with the retail locations, Debtor has also developed a growing direct-to-consumer ecommerce and wholesale business with its private label brand Mind Body Bowl, which speaks to the same holistic approach to pet health and care embodied in the stores. Mind Body Bowl is currently on shelf in 400+ grocery stores including Erewhon, Gelsons, and Bristol Farms. This serves to further monetize the brand as well as extend the brand reach geographically and demographically. Gross annual sales are approximately $40 million, and Debtor has approximately 300 employees.

8. As reflected in the Court record, this bankruptcy case was precipitated by the acts of one or more purported secured creditors that caused a nearly complete cessation of Debtor's cash flows.[2] One purported secured creditor, Instafunding LLC aka TVT SPVL ("Instafunding") filed an alleged "confession of judgment" in Utah State court on December 3, 2024, and immediately took steps to enforce such judgment aggressively, even prior to its entry by the Utah State Court. In addition, Instafunding sent a notice of its purported lien to Debtor's merchant credit card processor TSYS Merchant Solutions, LLC dba Global Payments on or about December 3 or 4, 2024. This notice of lien caused all of Debtor's cash flow from credit card purchases to cease. This was devastating to Debtor's operations as in excess of 95% of its operating revenues come from its credit card sales. Therefore, Debtor was placed in the difficult

[2] A detailed background of Debtor and the reasons for this bankruptcy case is set forth in the Omnibus Declaration of Mark Boonnark in Support of Emergency Motions filed on December 11, 2024 (Dkt. No. 9).

position of having to file an emergency bankruptcy petition as the holiday season was already underway.

9. Since the Petition Date, due to Instafunding's heavy-handed tactics and the emergency nature of Debtor's bankruptcy filing, Debtor was involved with myriad tasks outside of its ordinary course of business. Debtor's management was tasked with all of the burdensome administrative tasks that are attendant to the commencement and prosecution of a chapter 11 case. At the very beginning of the case, Debtor had to obtain a Court order granting use of cash collateral, and to also “unfreeze” the approximately $1.5 million held by its merchant credit card processor that had been withheld from Debtor due to Instafunding's strong-arm tactics. In addition, Debtor’s limited management resources were absorbed with dealing with vendors and various business partners concerned about the sudden and unexpected bankruptcy case filing. Debtor’s management also had to attend to its workforce of approximately 300 employees to ensure high morale was maintained in Debtor’s retail workforce through the holidays.

10. Debtor's post-petition efforts have been aimed at stabilizing the company’s operations and remain as a going concern despite the challenges of this chapter 11 bankruptcy, unexpected events such as the recent Los Angeles fires, and competitive business environment. Debtor has obtained orders from this Court relating to its unique cash management needs, authority to use cash collateral, and issues relating to payment of utility deposits and priority wages. Further, Debtor’s administrative staff has dealt with numerous case administration tasks, including, among others: (1) compliance with the operating requirements under the Bankruptcy Code, Bankruptcy Rules, and the Guidelines of the United States Trustee (the “UST”), (2) preparing the 7-Day Package for submission to the UST and gathering documents and information related thereto, (3) transitioning from pre-petition to post-petition banking relationships; (4) preparing monthly operating reports, all amidst operating Debtor's business in a competitive environment. As mentioned, Debtor also had to deal with the unexpected business challenges posed by the recent fires throughout Los Angeles County, which adversely impacted multiple of Debtor's retail locations.

11. Nonetheless, Debtor maintained its focus on options for successfully emerging from this chapter 11 case. Since the Petition Date, Debtor implemented various strategies to increase sales and improve operating efficiencies. Unfortunately, despite Debtor's best efforts, Debtor is now experiencing significant negative operating cash flows and its ability to remain a going concern is highly questionable. As set forth in the *Revised Cash Collateral Budget* filed with this Court on April 28, 2025 [Dkt. No. 136], it is anticipated that Debtor will have a *negative* cash balance of approximately $379,000 for the week of June 30, 2025. Therefore, Debtor has determined that a sale of its operating assets as a going concern will maximize the value of the bankruptcy estate and is the best interests of creditors and other parties in interest.

12. Debtor is currently in negotiations with a proposed buyer with respect to the terms of a sale of assets and assignment of leases and other executory contracts.

13. I anticipate that Debtor will file a motion to approve the terms of the sale of substantially all of Debtor's assets concurrently with this Motion or shortly thereafter. Due to imminent sale of Debtor's assets and the assumption and assignment of the Leases which is an integral and indispensable part of that sale transaction, a third-party buyer will make its own independent decision as to which of Debtor's retail locations it will continue to operate. At this time, however, I do not know whether the proposed sale will be final and/or closed prior to the current July 8, 2025 deadline by which Debtor must assume and assign the Leases. Consequently, Debtor requires additional time to within which it can assume (or reject) the Leases. I believe it is the best interests of this bankruptcy estate for an extension of the deadline to assume or reject the Leases to October 6, 2025.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 4 th day of June 2025, at Los Angeles, California.

MARK BOONNARK

# EXHIBIT "A"

| Company or Individual Name | Street | City | State | Zip | Description of Contract |
|---|---|---|---|---|---|
| 614 E. Col Properties | 2834 W. Imperial Hwy | Inglewood | CA | 90303 | Pasadena Store Lease - 614 E Colorado Blvd Pasadena CA 91101 |
| 8525 Santa Monica Blvd LLC | 710 N. Oakhurst Drive | Beverly Hills | CA | 90210 | West Hollywood Store Lease - 8525 Santa Monica Blvd West Hollywood CA 90069 |
| Allen C. Dennis Trustee | 5500 Rhodes Avenue | Valley Village | CA | 91607 | Studio City Store Lease - 12205 Ventura Blvd Studio City CA 91604 |
| American Commercial Equities Three | 22917 Pacific Coast HWY. St.300 | Malibu | CA | 90265 | Cost Mesa Store Lease - 1880 Newport Blvd Costa Mesa CA 92627 |
| Century City Mall LLC - Westfield | 2049 Century Park East 41st Floor | Los Angeles | CA | 90067 | Century City Store Lease - 10250 Santa Monica Blvd Ste 2580 Los Angeles CA 90067 |
| East of June LLC | 8900 Melrose Ave Suite 201 | West Hollywood | CA | 90069 | Hancock Park Store Lease - 6063 Melrose Ave Los Angeles CA 90038 |
| Industrious LS Hughes District LLC | 6600 Center Drive 10th Floor | Los Angeles | CA | 90045 | Coworking Office Lease - 6060 Center Drive, Floor 10 Suite 39 Los Angeles, CA 90045 |
| Ivy Station Residential LLC | 11777 San Vicente Blvd Suite 900 | Los Angeles | CA | 90049 | Culver City Store Lease - 8809 Washington Blvd Ste 126 Culver City CA 90232 |
| KB Properties | PO Box 2248 | Mill Valley | CA | 94942 | Rockridge Store Lease - 3206 College Avenue Berkeley CA 94705 |
| Koenig Family Properties LLC | P.O Box 8482 | Santa Cruz | CA | 95061 | Santa Monica Store Lease - 1110 Wilshire Blvd Santa Monica CA 90401 |
| Mamo LBMP Investors I LLC | PO Box 209427 | Austin | TX | 78720 | Long Beach Store Lease - 6433 E Pacific Coast Hwy Unit A-5 Long Beach CA 90803 |
| Michael Quagletti Trust | 2300 Garfield Avenue | Los Angeles | CA | 90064 | Warehouse Lease - 1831 W. 208TH ST. TORRANCE, CA 90501 |
| MSQ LLC | 13160 Mindanao Way | Marina del Rey | CA | 90292 | Marina del Rey Store Lease - 4718 Lincoln Blvd Marina del Rey CA 90292 |
| One Thousand Grand Avenue Holdings, LLC.<br>Hanover Grand LLC | 450 West Olympic | Los Angeles | CA | 90015 | Downtown LA Store Lease - 1000 S Grand Ave Ste A Los Angeles CA 90015 |
| Radbert and Diana Chin | P.O. Box 9440 | Fresno | CA | 93792 | Carmel Store Lease - 26200 Carmel Rancho Blvd Carmel CA 93923 |
| Runway Owners LLC | 12775 W Millenium Suite 165 | Playa Vista | CA | 90094 | Playa Vista Store Lease - 12746 Jefferson Blvd Ste 2130 Los Angeles CA 90094 |
| Silver Ridge Plaza | 2760 E. Spring St, Suite 200 | Long Beach | CA | 90806 | Silverlake Store Lease - 2550 Glendale Blvd Los Angeles CA 90039 |
| Walnut Square Center LP | 468 Green St. | San Francisco | CA | 94133 | North Berkeley Store Lease - 1510 Walnut St Ste A Berkeley CA 94709 |
| West Valley Owner LLC | 2049 Century Park East 41st Floor | Los Angeles | CA | 90067 | Topanga Store Lease - 6320 Topanga Canyon Blvd Ste 1635 Woodland Hills CA 91367 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **DEBTOR'S MOTION FOR ORDER EXTENDING TIME TO ASSUME OR REJECT UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES; MEMORANDUM OF POINTS AND AUHORITIES; DECLARATION OF MARK BOONNARK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 9, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jonathan Arias bknotices@zwickerpc.com
- Jamie Altman Buggy jbuggy@harvestllp.com, jkeatingwolk@harvestllp.com,atenreiro@harvestllp.com
- Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- Ivo Keller ikeller@sflaw.com, calendar@sflaw.com
- Sweeney Kelly kelly@ksgklaw.com
- Elizabeth S Lynch blynch@chinnery.com
- Noreen A Madoyan Noreen.Madoyan@usdoj.gov
- Stephen Malkiewicz stephen.malkiewicz@cintas.com
- Jean Pierre Nogues jpn@msk.com
- Dean G Rallis drallis@hahnlawyers.com, jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com;crogers@hahnlawyers.com;acastillo@hahnlawyers.com
- Abe G Salen asalen@wzllp.com, kmartin@wzllp.com,ddouglas@wzllp.com,akaderbarek@wzllp.com
- Daren M Schlecter daren@schlecterlaw.com, assistant@schlecterlaw.com
- Gary A Starre gastarre@gmail.com, mmoonniiee@gmail.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **June 9, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** <u>(state method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 9, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 9, 2025 | D. Woo | */s/ D. Woo* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

Healthy Spot Operating LLC
File #10424
Secured, UST

Noreen A Madoyan
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

ACH Capital West, LLC
8791 South Redwood Road Suite 200
West Jordan, UT 84088

TVT SPVL.com
2999 NE 191st St, Suite 500
Miami, Florida 33180

Insta Funding LLC
2999 NE 191st St, Suite 500
Miami, Florida 33180

Valerga LLP
ATTN: Brody Valerga
395 S. Main Street #201
Alpine, UT 84004

614 E. Col Properties
2834 W. Imperial Hwy
Inglewood, CA 90303

8126 Beverly Properties LLC
Arash Danialifar
2834 W. Imperial Hwy
Inglewood, CA 90303

8525 Santa Monica Blvd LLC
710 N. Oakhurst Drive
Beverly Hills, CA 90210

Allen C. Dennis Trustee
5500 Rhodes Avenue
Valley Village, CA 91607

American Commercial Equities Three
22917 Pacific Coast Hwy., St 300
Malibu, CA 90265

Century City Mall LLC - Westfield
2049 Century Park East, 41st Floor
Los Angeles, CA 90067

East of June LLC
8900 Melrose Ave Suite 201
West Hollywood, CA 90069

Essex Portfolio L.P.
1100 Park Place Suite 200
San Mateo, CA 94403

Industrious LS Hughes District LLC
6600 Center Drive 10th Floor
Los Angeles, CA 90045

Ivy Station Residential LLC
11777 San Vicente Blvd Suite 900
Los Angeles, CA 90049

KB Properties
PO Box 2248
Mill Valley, CA 94942

Koenig Family Properties LLC
P.O Box 8482
Santa Cruz, CA 95061

Mamo LBMP Investors I LLC
PO Box 209427
Austin, TX 78720

Michael Quagletti Trust
2300 Garfield Avenue
Los Angeles, CA 90064

MSQ LLC
13160 Mindanao Way
Marina del Rey, CA 90292

1000 Grand Avenue Holdings, LLC.
Hanover Grand LLC
450 West Olympic
Los Angeles, CA 90015

Radbert and Diana Chin
P.O. Box 9440
Fresno, CA 93792

Runway Owners LLC
12775 W Millenium, Suite 165
Playa Vista, CA 90094

Sepulveda Blvd Prop. LLC - Skechers
225 S Sepulveda Blvd
Manhattan Beach, CA 90266

Silver Ridge Plaza
2760 E. Spring St, Suite 200
Long Beach, CA 90806

Walnut Square Center LP
468 Green St.
San Francisco, CA 94133

West Valley Owner LLC
2049 Century Park East, 41st Floor
Los Angeles, CA 90067