DANIEL H. REISS (SBN 150573)
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dhr@lnbyg.com

Attorneys for Debtor and Debtor in Possession

FILED & ENTERED

JUL 17 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

HEALTHY SPOT OPERATING, LLC,

Debtor and Debtor in Possession.

Case No. 2:24-bk-20065-DS

Chapter 11

**ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND (F) GRANTING RELATED RELIEF**

Date: July 17, 2025
Time: 10:00 a.m.
Place: Courtroom 1639
255 East Temple Street
Los Angeles, CA 90012

The court held a hearing at the above time and place on the bid procedures motion (the "Bid Procedures Motion," Docket No. 173)[1] filed by Healthy Spot Operating, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"). Appearances were noted on the record. The court having considered the Motion, the documents filed in support of the motion, the arguments of counsel at the hearing, and the record in this case, for the reasons stated on the record by the court at the hearing,

IT IS HEREBY ORDERED that:

1. The Bid Procedures Motion is granted.

2. The Bid Procedures set forth in the "Bid Procedures Notice," annexed hereto as Exhibit 1, are approved in their entirety and are incorporated herein by this reference in full.

3. The Bid Procedures Notice must be served on all parties entitled to service of the Sale Motion under Federal Rules of Bankruptcy Procedure 6004 and 6006.

4. If any Qualifying Bids (as defined in the Bid Procedures Notice) other than the Stalking Horse Bid are received on or prior to the Bid Deadline:

a. The Debtor will conduct an Auction on July 27, 2025, at 10:00 a.m. (prevailing Pacific Time), at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Ave., Los Angeles, CA 90034, at which time the Successful Bidder and, if appropriate, a Back-Up Bidder, will be chosen; and

b. The Non-Auction Sale Hearing currently set for July 29, 2025 will be convened as a status conference only, and a Post-Auction Sale Hearing will be held on August 11, 2025, at 11:00 a.m. (prevailing Pacific Time), before the Honorable Deborah Saltzman in Courtroom 1639, Roybal Federal Building, 255 E. Temple Street, Los Angeles, CA 90012 at which hearing the Debtor will seek approval of a sale of the Assets and assignment of the Assigned Contracts to the Successful Bidder at the Auction.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Bid Procedures Motion.

5. The Post-Auction Sale Notice to Assigned Contract Counterparties in the form annexed hereto as Exhibit 2 is approved.

6. In the event of any inconsistencies between this order and the Bid Procedures Motion and/or the Bidding Procedures, this order will govern in all respects.

7. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this order.

8. The terms and conditions of this order are immediately effective and enforceable upon its entry.

9. This court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this order.

###

Date: July 17, 2025

Deborah J. Saltzman
United States Bankruptcy Judge

**Exhibit 1**

**Notice of Bidding Procedures**

DANIEL H. REISS (SBN 150573)
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dhr@lnbyg.com

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HEALTHY SPOT OPERATING, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:24-bk-20065-DS<br><br>Chapter 11 Case<br><br>**NOTICE OF BIDDING PROCEDURES FOR THE SALE OF DEBTOR'S ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS**<br><br>Date: July 17, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 1639<br>255 East Temple Street<br>Los Angeles, CA 90012 |

On or about July 10, 2025, Healthy Spot Operating, LLC, the debtor and debtor-in-possession herein ("Debtor"), entered into that certain Asset Purchase Agreement by and among Debtor and Pet Pros LLC and NPM Franchising, LLC, both Washington limited liability companies, jointly and severally (hereinafter the "Stalking Horse Purchaser" or " the "Stalking Horse Bidder"), subject to higher or better offers ("Stalking Horse Purchase Agreement"). The purchase price for the Assets and assignment of the Assigned Contracts (the "Purchase Price") as set forth on Schedule H to the Stalking Horse Purchase Agreement is $6,315,158.00, and shall consist of:

i. payment of cash consideration to Debtor in the sum of $950,000;

ii. assumption of the Assumed Liabilities (as defined in the Stalking Horse Purchase Agreement);

iii. a credit bid of the amount of the Stalking Horse Purchaser's secured claims of $2,876,344.20, assuming the Stipulation is approved by this Motion; and

iv. all amounts paid in connection with the assumption and assignment of the Assigned Contracts.

On July 10, 2025, Debtor filed its *Motion for Order: (1) Authorizing Sale of Certain Assets Free and Clear Of All Liens, Claims, Encumbrances, and Interests; And (2) Authorizing Assumption and Assignment of Certain Leases* [Dkt. No. 171] (the "Sale Motion") to approve the Stalking Horse Purchase Agreement, and a hearing on the Sale Motion has been set for July 29, 2025 on the Court's 1:00 p.m. calendar (the "Non-Auction Sale Hearing").

However, pursuant to these sales procedures, if one or more "Qualifying Bids", as defined below, are received no later than July 20, 2025 (the "Bid Deadline"): (1) Debtor will file and serve notice of the receipt of a Qualifying Bid and the time, date and place of the auction no later than two business days after the Bid Deadline, as well as the time, date and place of the "Post-Auction Sale Hearing" as defined below; (2) the Non-Auction Sale Hearing shall be held as a status conference (the "Post-Bidding Status Conference") to inform the Court regarding the progress of the sale process and any other matter the Court wishes to be addressed; (3) an auction

shall be conducted by Debtor among the "Qualifying Bidders" one day after the Post-Bidding Status Conference; (4) a continued hearing date on the Sale Motion shall be held on August 11, 2025 at 11:00 a.m. in the above-entitled Court (the "Post-Auction Sale Hearing"), at which hearing the Court will rule on the Sale Motion with respect to approval of a sale to the "Successful Bidder" at the auction. If no Qualifying Bid is received prior to the Bid Deadline, Debtor will not conduct an auction and will proceed to seek approval of the Sale Motion at the Non-Auction Sale Hearing.

On July __, 2025, the Court entered a Bid Procedures Order [Dkt. No. _], which approved certain Bid Procedures pursuant to section 363 of the Bankruptcy Code to determine the Successful Bidder (as defined below) for the Assets.

**A. Requirements to Participate in Sale/Auction Process.**

1. **Qualification as a Bidder**: Any entity wishing to participate in the bidding process must first qualify as a "Qualifying Bidder". To become a Qualifying Bidder, a potential bidder must submit to Debtor and its counsel documentation identifying the interested party, its principals and the representatives who are authorized to appear and act on their behalf for all purposes with respect to the transaction at issue; (ii) an executed confidentiality agreement in a form and substance reasonably satisfactory to Debtor; (iii) a statement demonstrating the interested party has a *bona fide* interest in consummating the transaction, and (iv) sufficient information demonstrating that the interested party has the financial ability and authority to close a sale, including current audited financial statements.

   For all purposes under the Bidding Procedures, the Stalking Horse Purchaser shall be considered a Qualifying Bidder and the Stalking Horse Purchase Agreement (also referred to herein as the "Stalking Horse Bid") shall be considered a Qualifying Bid (defined below).

2. **Due Diligence**: Debtor will provide any Qualifying Bidder with reasonable access to information that is reasonable and appropriate under the circumstances to exercise due diligence regarding the Assets.

   The due diligence period shall extend through and including the Bid Deadline. Debtor may, but shall not be obligated to, in its sole discretion, furnish any due diligence information after the Bid Deadline. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, Debtor shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement.

Debtor is not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidder in connection with the Bidding Procedures and the Sale.

3. **Bid Requirements**:

i. *Qualifying Bid*. Other than the Stalking Horse Bid, to be deemed a "Qualifying Bid," a bid must be received on or before the Bid Deadline and satisfy each of the following criteria:

a) be a written agreement substantially identical to the Stalking Horse Purchase Agreement, except for the consideration to be paid for the Assets and the unexpired leases and executory contracts being assumed and assigned;

b) the purchase price of any Qualifying Bid must be at least $50,000 greater than the aggregate sum of the (a) Purchase Price, plus the (b) approved Break-up Fee, plus (c) the approved Expense Reimbursement;

c) fully disclose the identity of the Qualifying Bidder and all parties participating in the Qualifying Bid and provide contact information for the authorized representative;

d) state the liabilities proposed to be paid or assumed by the Qualifying Bidder;

e) state that the Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable, and that the Assets are being acquired "as-is" without any representations or warranties regarding the condition or value of such Assets;

f) provide credible and admissible evidence that the Qualifying Bidder is financially capable of consummating the transaction contemplated by the bid and provide written evidence in support thereof;

g) contain such other financial information to allow Debtor to determine that the Qualifying Bidder is financially and otherwise capable to close the transaction;

h) contain such financial and other information to allow the Debtor make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform

under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows Debtor to serve, within one (1) business day after such receipt (or as soon as practicable thereafter), such information upon any Counterparties (as that term is defined below) to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information;

i) contain a description with particularity each and every executory contract and unexpired lease that the Qualifying Bidder requires to be assumed and assigned as a condition to close the transaction;

j) must not include a provision requesting or entitling the Qualifying Bidder to any break-up fee, termination fee, reimbursement or any similar type of payment (except in the case of the Stalking Horse bid);

k) must not contain any contingencies of any kind, including, contingencies regarding further due diligence, financing or internal approvals;

l) contain a written acknowledgement and representation that the Qualifying Bidder has had an opportunity to conduct any and all due diligence regarding that Assets and has relied solely on its own independent review and investigation of the documents and information in making its Qualifying Bid and did not rely on any written or oral statements, representations, promises, warranties, or guarantees whatsoever regarding the Assets or the completeness of any documents or other information provided in connection with the Bidding Procedures or the Sale.

m) provides for the Qualifying Bidder to serve as the back-up bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid after the Successful Bid, as defined below;

n) inclusion of written authorization from the Qualifying Bidder's governing body (i.e., a board of directors) with respect to the submission of the Qualifying Bid and the consummation of the contemplated transaction;

o) is accompanied by a good faith cash deposit equal to ten percent (10%) of the purchase price (the "Deposit") provided for in the Qualifying Bid to be deposited, prior to the Bid Deadline, with counsel for the Debtor, such deposit information to be provided upon request by any Qualifying Bidder;

p) provides for liquidated damages in the event of the Qualifying Bidder's breach of or failure to perform under, the asset purchase agreement equal to the amount of the Deposit.

Debtor reserves the right to negotiate with any Qualifying Bidder to cure any deficiency in a bid that is not initially deemed a Qualifying Bid in advance of an Auction.

ii. *Bid Deadline*. The Sale Motion is currently set for July 29, 2025 (the "Non-Auction Hearing Date"). A Qualifying Bidder, other than the Stalking Horse Purchaser, that desires to submit a bid must deliver both a written and electronic copy of its bid in **both** PDF and WORD format to counsel for Debtor so that it is received no later than **4:00 p.m. (prevailing Pacific Time) on July 20, 2025** (the "Bid Deadline"). **Any party that does not submit a bid by the Bid Deadline will not be permitted to participate in the Auction.**

iii. *Evaluation of Qualifying Bids*. Debtor shall make a determination as to whether a timely submitted bid is a Qualifying Bid and shall notify Qualifying Bidders that their bid is a Qualifying Bid by no later than two (2) business days prior to the Auction Date. In the event that a bid is determined not to be a Qualifying Bid, in the Debtor's sole discretion, the bidder may be notified by Debtor and shall have until 24 hours prior to the Auction to modify its bid to increase its purchase price or otherwise improve the terms of its bid.

iv. *Baseline Bid.* No later than 5:00 p.m. prevailing Pacific Time on the business day prior to the Auction Date, Debtor shall determine which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder"), and shall promptly notify the Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

4. **Right to Credit Bid**. Any Qualified Bidder that has a valid and perfected lien on the Assets of the Debtor (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of Section 363(k) of the Bankruptcy Code; provided, however, that a Secured Creditor shall have the right to credit bid its claim only with respect to collateral by which the Secured Creditor is secured. Any junior secured creditor seeking to credit bid must include in its bid that it will pay off the entirety of all indebtedness secured by liens senior in priority to that of the Secured Creditor making the credit bid as a condition to its Qualifying Bid.

5. **No Qualifying Bid/No Auction/Sale Approval.** If no Qualifying Bids other than the Stalking Horse Purchaser's Qualifying Bid are submitted on or before the Bid Deadline, **no Auction shall be held**; further, no later than two business days after the Bid Deadline, Debtor shall file a declaration with the Court that no Qualifying Bids were timely received. The hearing on the Sale Motion shall then proceed at the Non-Auction Sale Hearing on July 29, 2025 at 1:00 p.m. at which Debtor shall request that the Court approve the Stalking Horse Purchase Agreement and the transactions contemplated thereunder as requested in the Sale Motion.

6. **Notice of Qualifying Bid/Sale Hearing.** If one or more Qualifying Bids other than the Stalking Horse Purchaser's Qualifying Bid is submitted on or before the Bid Deadline:

i. no later than two business days after the Bid Deadline, Debtor will file with the Court and serve notice of the receipt of a Qualifying Bid, which notice will include the time, date and place of the auction (the "Qualifying Bid Notice"). The Qualifying Bid Notice shall be served on all Qualifying Bidders and on all contract Counterparties (as defined below) who made a written request to Debtor for such notice by e-mail, fax or other similar means, which written request must be actually received by counsel for Debtor no later than the Bid Deadline. Unless Counterparties make such written request, they will not receive the Qualifying Bid Notice;

ii. an auction shall be conducted by Debtor in the manner set forth below; and

iii. the Non-Auction Sale Hearing shall be held as a status conference (the "Post-Bidding Status Conference") with respect to the progress of the sale process and any other matter the Court wishes to be addressed with respect to the Sale Motion or otherwise;

iv. a continued hearing date on the Sale Motion shall be held approximately one week after the Auction Sale (subject to the Court's calendar) (the "Post-Auction Sale Hearing"), at which hearing the Court will rule on the Sale Motion with respect to approval of a sale of the Assets to the "Successful Bidder" at the auction.

7. **Auction**: If Debtor timely receives one or more Qualifying Bids other than the Stalking Horse Bid, then Debtor shall conduct an auction (the "Auction"). Following the Auction, Debtor will determine which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors:

i. the terms of proposals submitted by each Qualifying Bidder;

ii. the extent to which such terms are likely to delay closing of the sale;

iii. the total consideration to be received by the Debtor's estate;

iv. the transaction structure and execution risk, including conditions, timing, financial wherewithal, etc.;

v. the net benefit to the estate; and

vi. such other factors as are reasonable given the facts and circumstances of this case.

The Auction shall be governed by the following procedures:

i. the Auction shall be held on July 27, 2025, the day after the Post-Bidding Status Conference (the "Auction Date") at 10:00 a.m. prevailing Pacific Time, at

Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Ave., Los Angeles, CA 90034, or such other date and time as Debtor may notify Qualifying Bidders; provided that such other date and time is not earlier than two (2) business days following the delivery of such notice;

ii. only the Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (collectively, the "Auction Bidders") shall be entitled to participate at the Auction;

iii. the Auction Bidders shall appear in person or, upon Debtor's consent in its sole discretion, by Zoom or other mutually acceptable means at the Auction, through a duly authorized representative;

iv. only Debtor, the Auction Bidders, and any creditor of Debtor, together with the professional advisors to each of the foregoing parties, may attend the Auction;

v. Debtor and its professional advisors shall direct and preside over the Auction;

vi. the Auction Bidders shall confirm in writing that they have not engaged in any collusion with respect to their bids, the Bidding Procedures, the Auction or the Sale;

vii. bidding shall commence at the amount of the Baseline Bid with the first overbid being equal to the Baseline Bid plus $50,000, with successive bids in increments of at least $50,000, provided that: (i) each successive bid must be a Qualifying Bid; and (ii) Debtor shall retain the right to modify the bid increment requirements at the Auction in its reasonable discretion;

viii. the Auction may include individual, but non-collusive, negotiations with any of the Auction Bidders, but all bids shall be made in the presence of all of the Auction Bidders;

ix. all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and Debtor shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have;

x. Debtor and its professional advisors may announce additional procedural rules that are reasonable under the circumstances for conducting the Auction; provided, however, that such rules are not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with this Case;

xi. each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the

contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

xii. the Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or the Stalking Horse Purchase Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not be, in Debtor's sole discretion, less favorable to Debtor and its estate than the terms of the Auction Bidder’s respective Purchase Agreements or the Stalking Horse Agreement, as applicable, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Post-Auction Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

xiii. upon the conclusion of the Auction, Debtor shall determine, and subject to Court approval, the offer for the Assets that is the highest or best from among the Qualifying Bids submitted at the Auction, which may be the Stalking Horse Agreement (the “Successful Bid”).

In making this decision, Debtor shall consider the amount of the purchase price, the likelihood of the bidder’s ability to close a transaction and the timing thereof, the nature and impact of any variances from the form Purchase Agreement requested by each bidder, and the net benefit to Debtor’s estate. The bidder submitting such Successful Bid, which may be the Stalking Horse Purchaser, shall become the “Successful Bidder,” and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable. Debtor may, in its sole discretion, designate Back-Up Bids (and the corresponding Back-Up Bidders) to purchase the Assets in the event that the Successful Bidder does not close the Sale.

xiv. prior to the Post-Auction Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY,**

**FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

8. **Post-Auction Sale Hearing**: If an Auction is held, the Successful Bid will be subject to approval by the Court. The Post-Auction Sale Hearing to approve such Successful Bid and any Back-Up Bid shall take place no earlier than one calendar week after the Auction Date at such time as the Court sets at the hearing on this Bid Procedures Motion.

   At the Post-Auction Sale Hearing, Debtor will seek entry of an order that, among other things:

   (i) authorizes and approves the Sale to the Successful Bidder, pursuant to the terms and conditions set forth in the Purchase Agreement executed by the Successful Bidder, as applicable;

   (ii) finds that the Successful Bidder, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and

   (iii) as appropriate, exempts the Sale(s) and conveyance(s) of the Assets from any transfer tax, stamp tax or similar tax, or deposit under any applicable bulk sales statute.

9. **Back-Up Bidder**. Notwithstanding the foregoing, in the event that the Successful Bidder fails to close by ten (10) business days following the Post-Auction Sale Hearing Date, the Back-Up Bid will be deemed to be the Successful Bid, and Debtor will be authorized, but not directed to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties. Unless otherwise directed by Debtor, the Back-Up Bidder will be required to close the Sale no later than ten (10) business days from the date Debtor notifies the Back-Up Bidder that the Successful Bidder failed to close the Sale.

10. **Return of Deposits**. All Deposits shall be returned to each bidder not selected as the Successful Bidder or the Back-Up Bidder(s) no later than five (5) business days following the closing of the Sale. The deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the subject Purchase Agreement or the Stalking Horse Agreement, as applicable, Debtor shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the

Back-Up Bidder) as part of the damages resulting to the estate for such breach or failure to perform.

11. **Reservation of Rights**. Notwithstanding any of the foregoing, Debtor reserves the right to modify these Bidding Procedures during or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, to allow for bidding on only a portion of the Assets but not all of them, to modify bidding increments, to waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), to impose additional terms or conditions with respect to any or all Potential Bidders, to adjourn or cancel the Auction during or prior to the Auction, and to adjourn the Post-Auction Sale Hearing.

**B. Procedure For Assumption and Assignment of Unexpired Leases and Executory Contracts.**

1. On July 10, 2025, Debtor filed and served the Sale Motion on each counterparty to an Assigned Contract (each, a "Counterparty," and collectively, the "Counterparties") which included the cure amount (each, a "Cure Amount") on the Schedule of Assigned Contracts annexed to the Stalking Horse Purchase Agreement, if any, that Debtor is required to pay to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assigned Contracts. If a Counterparty objects to (i) the Cure Amount for its Assigned Contract; (ii) the provision of adequate assurance of future performance, or (iii) the assumption of such Assigned Contract on any other ground, the Counterparty is required to serve a written objection (a "Contract Objection") no later than July 17, 2025 (the "Contract Objection Deadline").

2. Counterparties which did not timely file a Contract Objection shall be barred from objecting to the Cure Amount with respect to any Assigned Contract. However, if an Auction is held, Counterparties may object to the assignment of their respective Assigned Contract that solely relates to the adequate assurance of future performance by a Successful Bidder (other than a Stalking Horse Purchaser). Such objection shall be filed in accordance with subparagraph (7) below.

3. In the event Debtor receives one or more Qualifying Bids, Debtor shall send by overnight mail, email or facsimile copies of the documentation constituting any Qualifying Bid received as soon as practicable, but not later than two (2) business days after the date of the Bid Deadline, to all Counterparties whose Assigned Contracts are included in such Qualifying Bid; provided, however, that such information shall only be provided to those Counterparties who have submitted a written request to Debtor for such Qualifying Bid information, which request must be received by Debtor's counsel prior to the Bid Deadline.

4. If after filing the Sale Motion, additional executory contracts or unexpired leases of the Debtor are determined to be Assigned Contracts (such additional contracts,

the "Additional Contracts"), as soon as practicable thereafter and in no event less than three (3) business days before the date of the Non-Auction Sale Hearing, Debtor shall file with the Court and serve, by overnight delivery, on the Counterparties a notice of such assumption with the respective Cure Amounts and other required and pertinent information, and such Counterparties shall file any Contract Objections not later than: (i) the Contract Objection Deadline in the event that such notice is filed and served within five (5) days of the filing of the Sale Motion and (ii) one (1) business day prior to the commencement of the Non-Auction Sale Hearing in the event that such Assumption Notice was filed and served more than five (5) days after the date the Sale Motion was filed.

5. No later than one court day after the conclusion of the Auction, if any, or as soon as reasonably practicable thereafter, Debtor shall file with the Court a notice identifying the Successful Bidder (a "Notice of Successful Bidder"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (if any), (ii) the Selected Assigned Contracts (as defined below), and (iii) the proposed assignee(s) of such Selected Assigned Contracts.

6. No later than one court day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, Debtor will cause to be served by e-mail, overnight mail, or equivalent method, upon each affected Counterparty that made a prior written request to Debtor's counsel in writing (including by e-mail) no later than the Bid Deadline, the following information: (i) notice of Successful Bidder and (ii) the Successful Bidder's Qualified Bid information.

7. The Counterparties may file any Contract Objections with respect to any Successful Bidder other than the Stalking Horse Bidder, which Contract Objections shall relate solely to adequate assurance of future performance, not later than two (2) court days prior to the Post-Auction Hearing Date. Such Contract Objections must be served on the Successful Bidder and Debtor's counsel so as to be actually received by 5:00 p.m. July 17, 2025, or such other day that is two court days prior to the Post-Auction Hearing Date.

8. At the Non-Auction Sale Hearing or Post-Auction Sale Hearing (both referred to herein as a "Sale Hearing"), Debtor will seek Court approval of the assumption and assignment to the Stalking Horse Purchaser (or the Successful Bidder if an Auction is held), of only those Assigned Contracts that have been selected to be assumed and assigned (each, a "<u>Selected Assigned Contract</u>," and collectively, the "<u>Selected Assigned Contracts</u>"). At any time prior to a Sale Hearing, the Stalking Horse Purchaser or other Successful Bidder may choose to exclude any Assigned Contract as a Selected Assigned Contract. Debtor reserves any and all rights with respect to any Assigned Contracts that are not ultimately designated as Selected Assigned Contracts, including the right to seek further authority from the Court to assume and assign such other remaining Assigned Contracts to the Successful Bidder or other third party upon further notice and hearing.

9. If no Contract Objection is timely received with respect to a Selected Assigned Contract: (i) the Counterparty to such Selected Assigned Contract shall be

deemed to have consented to the assumption by Debtor and assignment to the Successful Bidder of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against Debtor and its estate or any Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

**PLEASE TAKE NOTICE THAT IF NO OBJECTION TO (A) THE CURE COSTS(S), (B) THE PROPOSED ASSIGNMENT AND ASSUMPTION OF ANY ASSIGNED CONTRACT, OR (C) ADEQUATE ASSURANCE OF THE STALKING HORSE PURCHASER'S OR THE SUCCESSFUL BIDDER'S ABILITY TO PERFORM IS FILED BY THE CURE OBJECTION DEADLINE, THEN (I) YOU [THE CONTRACT COUNTERPARTY] WILL BE DEEMED TO HAVE STIPULATED THAT THE CURE COSTS AS DETERMINED BY THE DEBTOR ARE CORRECT, (II) YOU [THE CONTRACT COUNTERPARTY] WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING ANY ADDITIONAL CURE AMOUNT UNDER THE PROPOSED ASSIGNED CONTRACT, AND (III) YOU [THE CONTRACT COUNTERPARTY] WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM OBJECTING TO SUCH PROPOSED ASSIGNMENT TO THE SUCCESSFUL BIDDER ON THE GROUNDS THAT THE SUCCESSFUL BIDDER HAS NOT PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE AS OF THE CLOSING DATE OF THE SALE.**

**C. Key Dates.**

The Bidding Procedures contain the following key dates for the proposed Sale process:[2]

| **Date** | **Deadline** |
|---|---|
| July 10, 2025 | Date Sale Motion and Bid Procedures Motion were filed. |
| July 17 2025 | Contract Objection Deadline. |
| July 17, 2025 | Deadline to object to Sale Motion. |
| July 20, 2025 | Bid Deadline |
| July 20, 2025 at 5:00 p.m. | Deadline for counterparties to executory contracts and unexpired leases to request Qualified Bidder information, if any |
| July 20, 2025 at 5:00 p.m. | Deadline for counterparties to executory contracts and unexpired leases to request Successful Bidder information, if any |
| July 22, 2025 | Debtor's Deadline to Respond to Sale Objections |
| July 23, 2025 | Deadline for Debtor to file a declaration whether one or more Qualifying Bids were received |
| July 29, 2025 at 1:00 p.m. | Non-Auction Sale Hearing, or if Qualifying Bid is timely received, Post-Bidding Status Conference |
| **THE BELOW PROCEDURES APPLY ONLY IF A QUALIFYING BID IS TIMELY RECEIVED** | |
| July 22, 2025, 2025 at 5:00 p.m. | Deadline for Debtor to notify Qualifying Bidders that their bid is a Qualifying Bid and Designate Baseline Bid |
| July 22, 2025, 2025 | Deadline for Debtor to file and service notice of receipt of Qualifying Bid (two days after Bid Deadline) |
| July 27, 2025 at 10:00 a.m. | Auction Date, if any Qualified Bids are received other than the Stalking Horse Bid |
| July 28, 2025 | If Auction is held, deadline to file Notice of Successful Bidder and to serve the Post-Auction Counterparty Notice on counterparties to Assigned Contracts who have requested same regarding the Successful |

[2] Parties should read all of the Bid Procedures carefully and not rely on the summary set forth in this table with respect to their rights which may be affected.

| | |
|---|---|
| | Bidder information. |
| August 2, 2025 | Deadline for counterparties to assumed and assigned contracts to file an objection based on adequate assurance of future performance regarding a Successful Bidder other than the Stalking Horse Purchaser. |
| At or prior to the Post-Auction Sale Hearing | Deadline for Debtor to respond to adequate assurance objections filed by Counterparties to Assigned Contracts |
| August 11, 2025 at 11:00 a.m. | Post-Auction Sale Hearing |

**Exhibit 2**

**Post-Auction Sale Notice to Assigned Contract Counterparties**

DANIEL H. REISS (SBN 150573)
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dhr@lnbyg.com

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HEALTHY SPOT OPERATING, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:24-bk-20065-DS<br><br>Chapter 11 Case<br><br>**NOTICE AFTER AUCTION SALE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WHICH MAY BE ASSUMED AND ASSIGNED**<br><br>Date:<br>Time:<br>Place: Courtroom 1639<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**YOU ARE RECEIVING THIS NOTICE BECAUSE (1) AN AUCTION SALE HAS BEEN HELD; (2) YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTOR HAS SET FORTH ON EXHIBIT A ATTACHED HERETO; AND (3) YOU PREVIOUSLY REQUESTED THIS NOTICE BE SENT TO YOU.**

**PLEASE TAKE FURTHER NOTICE THAT** on July 10, 2025 Debtor filed *Debtor's Motion for Entry of An Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of Debtor's Assets, (B) Approving The Form And Manner of Notice Thereof, and (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, (E) Approving the Sale of Debtor's Assets, and (F) Granting Related Relief* [Dkt. No. 173] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the Central District of California (the "Court") seeking, among other things, entry of an order (the "Bid Procedures Order"): (a) authorizing and approving certain Bidding Procedures; (b) authorizing Debtor to select a Stalking Horse Bidder and approving the Bid Protections the sale of the Assets and assumption and assignment of the Assigned Contracts; (c) and approving the form and manner of notice regarding holding an auction and other procedures if a timely Qualifying Bid is received by Debtor. Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Bid Procedures Motion and the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that an Auction was held on July 27, 2025, at which it was determined that __________________ was the "Successful Bidder" and it was determined that ______________________ will serve as the "Back-Up Bidder". The Successful Bidder's Qualified Bid information is provided herewith.

**PLEASE TAKE FURTHER NOTICE** that if you object to a proposed assignment to the Successful Bidder of any Assigned Contract, including the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of this chapter 11 case; (iii) state with specificity the nature of the objection and must be filed with the Court and served August 2, 2025

(the "**Assignment Objection Deadline**"). Any such objection must be served on the following parties: (a) counsel for Debtor as indicated in the upper left corner of this Notice; (b) the Office of the United States Trustee; and (c) counsel for the Stalking Horse Purchaser, Jay Kornfeld and Richard B. Keeton Bush Kornfeld LLP 601 Union Street, Suite 5000, Seattle, WA 98101. Failure to file an objection by the Assignment Objection Deadline may be deemed to be consent to the assignment of any and all Assigned Contracts.

**PLEASE TAKE FURTHER NOTICE** that, copies of the Bidding Procedures Order, the Bidding Procedures, documents relating to the Successful Bidder or Back-Up Bidder, are available by requesting same in writing from Debtor's legal counsel, whose contact information is provided in the upper left corner of this Notice.

Dated: July __, 2025

HEALTHY SPOT OPERATING, LLC

By: ___*/s/ Daniel H. Reiss*___________
DANIEL H. REISS
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession