DANIEL H. REISS (SBN 150573)
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dhr@lnbyg.com

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HEALTHY SPOT OPERATING, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:24-bk-20065-DS<br><br>Chapter 11 Case<br><br>**EXHIBIT "A" TO ORDER (1) AUTHORIZING SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (2) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES AND CONTRACTS**<br><br>Date: July 29, 2025<br>Time: 1:00 p.m.<br>Place: Courtroom 1639<br>255 East Temple Street<br>Los Angeles, CA 90012 |

# EXHIBIT "A"

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "***Agreement***") is made and entered into effective as of _______________, 2025, by and among Pet Pros, LLC, a Washington limited liability company ("***Pet Pros***"), NPM Franchising, LLC, a Washington limited liability company ("***NPM***", and together with Pet Pros, collectively, "***Buyer***"), and Healthy Spot Operating, LLC, a Delaware limited liability company ("***Seller***").

## RECITALS

WHEREAS, Seller presently conducts the business of owning and operating retail pet stores for selling pet food, products, and services in the State of California and over the internet (collectively, the "***Business***");

WHEREAS, on December 10, 2024, Seller filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "***Bankruptcy Code***"), with the United States Bankruptcy Court for the Central District of California (the "***Bankruptcy Court***"), Case No. 2:24-bk-20065-DS (the "***Bankruptcy Case***");

WHEREAS, Buyer has sought Bankruptcy Court approval of that certain *Stipulation* (the "***Stipulation***") by and among Buyer, Seller, ACH Capital West, LLC ("***ACH***"), and Instafunding LLC a/k/a TVT SPVL ("***TVT***") allowing the claims, deemed filed under Section 1111(a) of the Bankruptcy Code, of ACH (Claim Nos. 9 & 10) and TVT (Claim Nos. 11 & 12) (collectively, the "***ACH/TVT Claims***") for the purpose of submitting a credit bid, under Section 363(k) of the Bankruptcy Code, in accordance with the Bid Procedures as set forth in the Bid Procedures Order and the Sale Motion;

WHEREAS Buyer anticipates that, upon Bankruptcy Court approval of the Stipulation, it will acquire all rights, title and interest in and to the ACH/TVT Claims, and shall file a *Transfer of Claim Other Than for Security* (the "***Claims Transfer Notice***") with the Bankruptcy Court;

WHEREAS, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and the Bid Procedures to be approved by the Bankruptcy Court (the "***Bid Procedures Order***"), Seller will solicit offers for the sale of certain assets of the bankruptcy estate of Seller;

WHEREAS, pursuant to the Bid Procedures Order, Buyer will serve as the Stalking Horse Bidder (as defined in the Bid Procedures Order), which establishes a baseline bid for the sale of the assets, subject to higher or better offers;

WHEREAS, upon the Bid Deadline, should no higher or better offers be received by Seller, Buyer will be designated the Successful Bidder, in accordance with the Bid Procedures, subject to Bankruptcy Court approval; and

WHEREAS, Seller desires to sell, transfer and assign to Buyer, and Buyer desires to acquire and assume from Seller, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Purchased Assets and the Assumed Liabilities upon the terms and subject to the conditions set forth herein.

**NOW THEREFORE**, for and in consideration of the foregoing premises, and for other good and valuable consideration, the receipt and sufficiency are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **Purchase and Sale of Purchased Assets**. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, on the terms and subject to the conditions set forth in this Agreement, at the Closing, Buyer hereby purchases, acquires, and accepts from Seller, on an "as is, where is" basis and without any representation or warranty on the part of Seller as to fitness, merchantability or otherwise, and Seller hereby sells, transfers, assigns, conveys, and delivers to Buyer, all of the Purchased Assets, free and clear of all liens, claims, interests and encumbrances (subject to the terms of this Agreement and the final order by the Bankruptcy Court granting the motion to authorize and approve the Contemplated Transactions (as defined below)), for the consideration set forth in Section 4.1; provided that NPM shall only purchase, acquire, and accept the IP Assets (as defined below), and Pet Pros shall purchase, acquire, and accept all Purchased Assets except for the IP Assets. "***Purchased Assets***" means all of the direct or indirect right, title, and interest of Seller in and to (a) all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories for and situated in the Purchased Stores (collectively, the "***Inventory***") of Seller; (b) all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, shelving, display tables and counters, refrigerators/freezers, grooming tables, kennels, cabinets, washers and dryers, tubs, computers, telephones, and other tangible personal property for and associated with the stores set forth on Schedule A (collectively, the "***Purchased Stores***"); (c) the real estate leases associated with the Purchased Stores (and only such Purchased Stores) set forth on Schedule B, including, without limitation, all deposits, prepayments, and other similar amounts retained by the applicable landlord (the "***Store Leases***"); (d) all rights and incidents of interest, and benefits accruing to, Seller under all contracts and agreements of Seller set forth on Schedule C to the extent associated with the Purchased Stores, whether written or oral (collectively, the "***Vendor Contracts***," and together with the Store Leases, the "***Assumed Contracts***"); (e) all accounts receivable of Seller associated with the Purchased Stores as of the Closing Date; (f) all intellectual property assets of Seller, including but not limited to patents, trademarks, brands, logos, trade names, copyrights and works of authorship, and all registrations, applications for registration, and renewals of, any of the foregoing, internet domain names and social media account or user names, websites and web pages, social media sites and pages, and all content and data thereon or relating thereto, trade secrets, know-how, inventions, computer programs, operating systems, applications, firmware and other code, and all other intellectual or industrial property rights (the "***IP Assets***"); (g) to the extent transferable, all permits, licenses, approvals, authorizations, registrations, certificates, which are held by Seller and required for the conduct of the Business as currently conducted or for the ownership and use of the Purchased Assets; (h) all rights to any actions of any nature available to or being pursued by Seller to the extent related to the Business, the Purchased Assets or the Assumed Liabilities, whether arising by way of counterclaim or otherwise; (i) all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums and fees (including any such items relating to the payment of taxes) related to and in connection with the Purchased Assets or the Assumed Liabilities; (j) all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets; (k) all insurance policies and benefits, including rights and proceeds, owed by Seller, arising from or relating to the Business, the Purchased Assets or the Assumed Liabilities; (l) originals, or where not available, copies, of all books and records of Seller, including but not limited to books of

account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, emails, and purchasing histories, price lists, distribution lists, supplier lists, quality control records and procedures, research and development files, records and data, sales material and records, operations manuals, employee handbooks, marketing and promotional surveys and research, marketing and branding manuals, telephone numbers, and other files; (m) all goodwill and the going concern value of the Business; and (n) any other assets as set forth on Schedule D.

2. **Excluded Assets**. Notwithstanding Section 1, Buyer expressly understands and agrees that Buyer is not purchasing or acquiring, and Seller is not selling or assigning, any of the following assets, properties, or rights of Seller (the "***Excluded Assets***"): (a) all bank accounts and cash on hand of Seller as of the Closing; (b) all benefit plans of Seller and assets attributable thereto; (c) all inventory, other personal property, and the real estate leases associated with the Closing Stores (as defined below); and (d) the assets, properties, and rights specifically set forth on Schedule E.

3. **Assumption of Liabilities**. At the Closing, Buyer hereby assumes and agrees to pay, perform, and discharge when due the following liabilities of Seller (collectively, the "***Assumed Liabilities***"): (a) trade accounts payable by Seller to third parties under as set forth on Schedule F, which remain unpaid as of the Closing Date, in the total amount of $1,775,788.16 (the "***Assumed Payable***"); (b) all liabilities under the Vendor Contracts but only to the extent that such liabilities are required to be performed after the Closing Date, were incurred in the ordinary course of business and do not relate to any failure to perform, improper performance, warranty or other breach, default or violation by Seller prior to the Closing Date; (c) liabilities and obligations of Seller for accrued but unused vacation, paid sick leave, paid time off as of the Closing Date with respect to the Transferred Employees (as defined below) in an aggregate amount not to exceed $215,514.00; and (d) all amounts owed under each Store Lease from the date of Seller's assignment of the Store Leases to Buyer (or any third party designed by Buyer). With respect to each of the Store Leases, Seller represents and warrants, as of the date hereof, to Buyer that, to the knowledge of Seller, there has been no release or threatened release at, on, under or from, and no hazardous substance is present at, on or under, any property covered by the Store Lease. Except for the Assumed Liabilities, Buyer will not assume and is not liable for any of Seller's obligations or liabilities of any kind or nature.

4. **Consideration**.

4.1 The aggregate consideration for the Purchased Assets shall consist of the following: (a) a credit bid in the amount $3,086,209.34 or such other amount consisting of Buyer's ACH/TVT Claims; (b) an amount (the "***Closing Payment***") equal to Ninety Hundred Fifty Thousand Dollars ($950,000.00), *minus* the aggregate amounts owed to the counterparty to each Store Lease that are due and payable on the Closing Date, as set forth on Schedule G, to cure defaults under such Store Lease (the "***Lease Cures***") as contemplated by Section 365 of the Bankruptcy Code; and (c) the assumption of the Assumed Liabilities. At Closing, Buyer shall pay, or cause to be paid, the Closing Payment to Seller by wire transfer of immediately funds to an account or accounts designated by Seller in writing prior to the Closing. Notwithstanding anything in this Agreement to the contrary, Buyer may pay, perform, or discharge any or all of the Assumed Liabilities after the Closing, and except for the Lease Cures, nothing contained in this Agreement

requires Buyer to pay, perform, or discharge any Assumed Liabilities on the Closing Date.

4.2 Each of the components of the consideration for the Purchased Assets set forth in Section 4.1 (in each case, to the extent relevant for and together with any other amounts constituting consideration for applicable tax purposes) shall be allocated as set forth on Schedule H attached hereto by mutual agreement of Buyer and Seller, in accordance with the provisions of Section 1060 of the Internal Revenue Code of 1986, as amended or any other applicable provision of applicable law.

5. **Inventory Schedule**. Within three (3) business days prior to the Closing, Seller will have prepared and delivered to Buyer a schedule setting forth Seller's good faith estimates of the Inventory level and value as of the Closing, in form and substance satisfactory to Buyer. Seller shall allow and assist Buyer and its authorized representative to conduct Inventory checks or inspections and promptly provide all documents, books, and records related to Seller's Inventory as requested by Buyer.

6. **Prorations**. Current taxes, payroll, and other items of expense relating to or attributable to the Assumed Contracts shall be prorated between Seller and Buyer as of the Closing Date. All liabilities and obligations, excluding the Assumed Liabilities, due in respect of periods prior to or as of the Closing Date shall be paid or otherwise satisfied by Seller, and all liabilities and obligations due in respect of periods after the Closing Date shall be paid or otherwise satisfied by Buyer.

7. **Closing**. The closing (the "***Closing***") of the transactions contemplated by this Agreement (the "***Contemplated Transactions***") shall take place remotely on the date (the "***Closing Date***") that is the first business day following the date on which all conditions to the obligations of Seller and Buyer to consummate the Contemplated Transactions set forth in Section 9 (other than conditions with respect to actions Seller or Buyer will take at the Closing itself, but subject to the satisfaction or waiver of those conditions) have been satisfied or waived, or at such other time or on such other date as shall be mutually agreed upon by Seller and Buyer prior thereto; provided, however, that the parties shall use reasonable best efforts to effectuate the Closing on or before August 1, 2025.

8. **Closing Deliverables**.

(a) Seller's Closing Deliverables: At or prior to the Closing, Seller shall deliver to Buyer the following documents and other items:

(i) a bill of sale, assignment and assumption agreement, in form reasonably satisfactory to the parties (the "***Bill of Sale***"), duly executed by Seller;

(ii) a trademark assignment agreement assigning all of Seller's registered trademarks to NPM, in form reasonably satisfactory to the parties (the "***Trademark Assignment***"), duly executed by Seller;

(iii) duly executed amendment to or assignment of the Store Leases in form and substance satisfactory to Buyer or its assignees;

(iv) resolution(s) of the member(s) of Seller authorizing the execution and delivery of this Agreement and the other agreements, instruments, and documents required to be delivered at the Closing to which it is a party and the taking of any and all actions reasonably necessary to consummate the Contemplated Transactions;

(v) an order of the Bankruptcy Court approving this Agreement and the Contemplated Transactions (the "***Sale Order***") reasonably acceptable to Buyer; and

(vi) all other documents, certificates, instruments, or writings reasonably requested by Buyer in connection herewith.

(b) Buyer's Closing Deliverables: At or prior to the Closing, Buyer shall deliver to Seller the following documents and other items:

(i) the Closing Payment;

(ii) the Bill of Sale, duly executed by Buyer;

(iii) the Trademark Assignment, duly executed by NPM; and

(iv) all other documents, certificates, instruments, or writings reasonably requested by Seller in connection herewith.

9. **Closing Conditions**.

(a) Buyer's obligation to consummate the Contemplated Transactions in connection with the Closing is subject to satisfaction or waiver (to the extent waivable) of the following conditions:

(i) receipt of an order of the Bankruptcy Court entered in the Bankruptcy Case approving the Stipulation;

(ii) the full execution and filing of the Claims Transfer Notice in the Bankruptcy Case;

(iii) receipt of the approval of the Contemplated Transactions by the Bankruptcy Court through entry of the Sale Order (the "***Bankruptcy Court Approval***");

(iv) receipt of the approval of the Contemplated Transactions by Buyer's board of managers or similar governing body and/or equity holders.

(v) receipt of the approval of the Contemplated Transactions by Buyer's lenders; and

(vi) delivery of the documents set forth in Section 8(a) by Seller to Buyer.

(b) Seller's obligation to consummate the Contemplated Transactions in connection with the Closing is subject to satisfaction or waiver (to the extent waivable) of the

following conditions:

(i) receipt of the Bankruptcy Court Approval; and

(ii) delivery of the documents set forth in Section 8(b) by Buyer to Seller.

10. **Termination**.

(a) At any time prior to the Closing, this Agreement may be terminated in accordance with this Section 10(a) and the Contemplated Transactions abandoned:

(i) by the mutual written consent of Buyer, on the one hand, and Seller, on the other hand;

(ii) by written notice from Buyer to Seller or Seller to Buyer, if one or more of the conditions set forth in Section 8 cannot be satisfied;

(iii) by written notice from Buyer to Seller, if Seller has failed to perform any covenant or agreement set forth in this Agreement (including an obligation to consummate the Closing); or

(iv) by written notice from either Buyer or Seller, if the Closing has not occurred at or before 11:59:59 p.m. Pacific Time on August 20, 2025.

(b) In the event of termination of this Agreement pursuant to Section 10(a), this Agreement shall become null and void and of no further force and effect, except (i) as otherwise expressly set forth herein and (ii) that Sections 10(b) and 12 shall survive any termination of this Agreement.

11. **Covenants**.

(a) At least three (3) business days prior to the Closing Date, Buyer shall provide Seller with notice of the employees of Seller with respect to the Purchased Stores that Buyer intends to offer employment. Seller hereby acknowledges that Buyer intends to offer employment to all existing employees at the Purchased Stores (except for the Manhattan Beach store listed on Schedule A) as of the date hereof and further agrees that, upon Buyer's reasonable request, Seller shall reasonably cooperate with and shall not impair Buyer's efforts to obtain the employment of such Business Employees. Each employee who receives and accepts such offer of employment prior to the Closing and commences work with Buyer on or promptly after the Closing Date shall be referred to herein as a "***Transferred Employee***". Seller shall terminate all Transferred Employees as of the Closing Date, and Buyer shall assume, and be responsible for, all liabilities and obligations that arise and are incurred after the Closing related to, any Transferred Employee ("***Post-Closing Employee Obligations***"). For clarity, Post-Closing Employee Obligations do not include, and Buyer does not assume, any liabilities to any Transferred Employee that existed, accrued or arose prior to the Closing, except for the liabilities that Buyer expressly assumed in Section 3(c) of this Agreement.

(b) From the date hereof, Buyer and Seller shall use reasonable efforts to cooperate with each other in assigning and assuming the Store Leases in accordance with Section 365 of the Bankruptcy Code. Seller shall use reasonable efforts to discontinue, or cause to be discontinued, any and all operations at the stores set forth on Schedule I (collectively, the "***Closing Stores***") in a timely manner. Within ten (10) business days after the Closing, Seller shall cause the Closing Stores to remove all signage containing, and to discontinue all use of any other materials that include, any reference to any marks, branding, and any other intellectual property used in the Business.

(c) Seller shall cooperate in good faith to transition the Business and provide Buyer with all necessary assistance and support in all aspects of the operation of the Business for a period of ninety (90) days following the Closing Date, without additional cost to Buyer.

(d) All stamp, transfer, documentary, sales, use, value added, registration, property, excise and other similar taxes and fees relating thereto (including any penalties, interest and additions to such taxes) incurred in connection with this Agreement and the Contemplated Transactions, if any, will be borne by Buyer.

(e) From and after the Closing Date, Seller shall not, and shall cause its affiliates not to: (i) market or offer any products or services using any of the words or terms (in any combination) that are identical or confusingly similar to, or a colorable imitation or dilutive of any of the words and terms ever used by the Company to market or offer any of the Company's products or services; or (ii) use the name "Healthy Spot" or any name that is confusingly similar to, or a colorable imitation or dilutive of such name, including on stationery, business cards or signage, without Buyer's prior written consent.

12. **Miscellaneous**. At any time and from time to time after the Closing, at Buyer's reasonable request and without further consideration, Seller shall execute and deliver to Buyer such other instruments of sale, transfer, conveyance, assignment, and confirmation, provide such materials and information and take such other actions as Buyer may reasonably deem necessary or desirable in order to more effectively transfer, convey, and assign to Buyer, and to confirm the foregoing assignment and Buyer's rights to all of the Purchased Assets, and, to the fullest extent permitted by law, the Assumed Liabilities. This Agreement may not be amended, modified, altered, or supplemented other than by means of a written instrument duly executed and delivered on behalf of Buyer and Seller. If any one or more of the provisions of this Agreement shall be determined to be invalid, illegal, or unenforceable in any respect under any applicable law, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired; provided, however, that in any such case the parties agree to use their best efforts to achieve the purpose of the invalid provision by a new legally valid provision. This Agreement shall be interpreted and construed according to, and governed by, the laws of the State of California, excluding any such laws that might direct the application of the laws of another jurisdiction. All costs and expenses incurred in connection with this Agreement and the Contemplated Transactions shall be paid by the party incurring such costs and expenses. Except as otherwise provided herein, references to Sections and Schedules, herein are references to Sections and Schedules of this Agreement. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile or portable document format (PDF) signatures will be

deemed to be original signatures for all applicable purposes.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties have duly executed this Asset Purchase Agreement as of the date first above written.

**SELLER:**

**HEALTHY SPOT OPERATING, LLC**

By: ______________________________
Name: Mark Boonnark
Title: CEO

**BUYER:**

**PET PROS, LLC**

By: ______________________________
Name: Michael Seitz
Title: CEO

**NPM FRANCHISING, LLC**

By: ______________________________
Name: Michael Seitz
Title: CEO

**IN WITNESS WHEREOF**, the parties have duly executed this Asset Purchase Agreement as of the date first above written.

**SELLER:**

**HEALTHY SPOT OPERATING, LLC**

By: ______________________________
Name: Mark Boonnark
Title:

**BUYER:**

**PET PROS, LLC**

DocuSigned by:
By: Michael Seitz
E93AE27BEC4C444...
Name: Michael Seitz
Title: CEO

**NPM FRANCHISING, LLC**

DocuSigned by:
By: Michael Seitz
E93AE27BEC4C444...
Name: Michael Seitz
Title: CEO

## SCHEDULE A

**Purchased Stores**

1. Carmel at 26200 Carmel Rancho Blvd, Carmel-By-The-Sea, CA 93923
2. Costa Mesa at 1880 Newport Blvd, Costa Mesa, CA 92627
3. Long Beach at 6433 Pacific Coast Hwy Unit A-5, Long Beach, CA 90803
4. Manhattan Beach at 204 S Sepulveda Blvd, Manhattan Beach, CA 90266
5. Marina Del Rey at 4718 Lincoln Blvd, Marina Del Rey, CA 90292
6. North Berkeley at 1510 Walnut St, Berkeley, CA 94709
7. Pasadena at 614 E Colorado Blvd, Pasadena, CA 91101
8. Playa Vista at 12746 Jefferson Blvd #2130, Playa Vista, CA 90094
9. Rockridge at 3206 College Ave, Berkeley, CA 94705
10. Santa Monica at 1110 Wilshire Blvd, Santa Monica, CA 90401
11. Studio City at 12205 Ventura Blvd, Studio City, CA 91604
12. Silverlake at 2550 Glendale Blvd, Los Angeles, CA 90039
13. West Hollywood at 8525 Santa Monica Blvd, West Hollywood, CA 90069
14. Torrance Warehouse w/sublease at 1831 West 208th Street, Torrance, CA 90501

# SCHEDULE B

## Store Leases

1. **Carmel Lease:**

Lease entitled Carmel Rancho Shopping Center II dated August 13, 2012, by and between Katherine L. Bucquet, Trustee of the George W. Beeman and Ruby R. Beeman Trusts (the "***Original Landlord***"), and Lewis E. Adams and M. Sarah Adams (the "***Original Tenant***"), together with that certain Addendum to Lease dated August 13, 2012, which were assigned by the Original Tenant to Healthy Spot B001 LLC, pursuant to that certain Assignment and Assumption of Lease and Consent of Lessor dated August 1, 2022, by and between Radbert Chin and Diana Chin (the "***Landlord***"), as successor-in-interest to the Original Landlord, and Healthy Spot B001 LLC, and then assigned by Healthy Spot B001 LLC to Healthy Spot Operating, LLC, pursuant to that certain Lease Assignment, Assumption, Amendment and Consent Agreement dated May 9, 2023, by and between Healthy Spot B001 LLC, Healthy Spot Operating, LLC, and the Landlord.

2. **Costa Mesa Lease:**

Retail Lease dated October 21, 2013, by and between American Commercial Equities Three, LLC (the "***Landlord***") and Healthy Spot Delta, LLC (the "***Original Tenant***"), together with that certain Guaranty of Lease dated October 21, 2013, made by Healthy Spot, LLC for the benefit of the Landlord, as amended by that certain First Amendment to Lease and Rent Relief Agreement dated April 26, 2022, by and between the parties thereto. The Retail Lease was assigned by the Original Tenant to Healthy Spot Gamma, LLC effective as of March 7, 2019, and assigned to Healthy Spot Operating, LLC pursuant to that certain Lease Assignment and Assumption Agreement dated April 23, 2023, by and between the Landlord, Healthy Spot Gamma, LLC, and Healthy Spot Operating, LLC.

3. **Long Beach Lease:**

Long Beach Marketplace Shopping Center Lease dated September 25, 2013, by and between Pacific Castle Newport I, LLC, Pacific Castle Investments I, LLC, and Pacific Castle Long Beach, L.P. (collectively, the "***Original Landlord***"), and Health Spot Epsilon LLC (the "***Original Tenant***"), together with that certain Guaranty of Lease made by Healthy Spot LLC for the benefit of the Original Landlord, as amended by those certain (i) First Amendment to Lease dated January 4, 2016, by and between the Original Landlord and Original Tenant, (ii) Second Amendment to Shopping Center Lease dated April 1, 2022, by and between MAMO LBMP Investors I LLC, as successor-in-interest to the Original Landlord (the "***Landlord***") and Healthy Spot LLC, as successor-in-interest to the Original Tenant, and (iii) Third Amendment to Shopping Center Lease dated January 31, 2024, by and between the Landlord and Healthy Spot Operating, LLC, as successor-in-interest to Healthy Spot LLC, together with a Guaranty of Shopping Center Lease dated January 31, 2024, made by Healthy Spot Holdings, LLC for the benefit of the Landlord, replacing Healthy Spot LLC with Healthy Spot Holdings, LLC a the guarantor.

4. **Marina Del Rey Lease:**

Standard Lease Agreement dated November 4, 2011, by and between MSQ, LLC (the "***Landlord***") and Healthy Spot Gamma, LLC (the "***Original Tenant***"), together with those certain Guaranty of Lease dated November 4, 2011, made by Andrew Tae Jin Kim and Mark Boonmark for the benefit of MSQ, LLC and Guaranty of Lease dated November 4, 2011, made by Healthy Spot, LLC for the benefit of MSQ, LLC, as amended by those certain (i) First Amendment of Lease dated May 18, 2012, (ii) Second Amendment of Lease dated September 2020, and (iii) Third Amendment of Lease dated August 1, 2022, each by and between the Landlord and the Original Tenant, and that certain Consent to Assignment, Assumption and Amendment of Lease Agreement dated May 26, 2023, pursuant to which the Standard Lease Agreement, as amended, was assigned by the Original Tenant to Healthy Spot Operating, LLC.

5. **North Berkeley Lease:**

Retail Lease dated July 1, 2019, by and between Walnut Square Center, LP, as Landlord, and Holistic Hound, LLC, as Tenant (the "***Original Tenant***"), together with those certain Assignment and Assumption of Lease Agreement dated October 3, 2019, by and between the Original Tenant and Healthy Spot B001, LLC, and Landlord Consent dated October 4, 2019 by and between Landlord, the Original Tenant, and Healthy Spot B001, LLC, and that certain Assignment and Assumption of Lease Agreement dated March 15, 2023, by and between the Healthy Spot B001, LLC and Healthy Spot Operating, LLC.

6. **Pasadena Lease:**

Healthy Spot Commercial Lease dated September 5, 2018, by and between 614 E COL Properties LLC (the "***Landlord***") and Healthy Spot Delta LLC (the "***Original Tenant***"), together with that certain Guaranty dated September 5, 2018, made by Healthy Spot, LLC for the benefit of the Landlord, which were assigned to Healthy Spot Delta LLC pursuant to a notice to the Landlord dated as of February 27, 2019, and assigned Healthy Spot Operating, LLC pursuant to that certain Assignment and Assumption of Lease Agreement dated March 15, 2023.

7. **Playa Vista Lease:**

Lease dated December 13, 2017, by and between Runway Owner, LLC (the "***Landlord***") and Healthy Spot 013 LLC (the "***Original Tenant***"), together with that certain Lease Guaranty dated December 13, 2017, made by Healthy Spot LLC for the benefit of the Landlord, as amended by those certain (i) First Amendment to Lease dated October 17, 2019, by and between Landlord and Healthy Spot Gamma, LLC, as successor-in-interest to the Original Tenant, (ii) Second Amendment to Lease dated September 15, 2020, by and between Landlord and Healthy Spot Gamma, LLC, and (iii) Third Amendment to Lease dated October 5, 2021, by and between Landlord and Healthy Spot Gamma, LLC, and that certain Assignment and Assumption of Lease Agreement dated March 20, 2023, by and

between Healthy Spot Gamma, LLC and Healthy Spot Operating, LLC.

8. **Rockridge Lease:**

Standard Industrial/Commercial Multi-Tenant Lease-Net dated January 18, 2019, by and between The William B. Drury and Kelly Drury Trust (the "***Landlord***") and Healthy Spot Alpha LLC (the "***Original Tenant***"), together with that certain Addendum to the Lease dated January 18, 2019, by and between the Landlord and the Original Tenant, and that certain Assignment and Assumption of Lease Agreement dated March 15, 2023, by and between the Original Tenant and Healthy Spot Operating, LLC.

9. **Santa Monica Lease:**

Shopping Center Lease Agreement between Florence A. Koenig, Trustee of The Koenig Family Revocable Living Trust, dated 1/25/89, as "Landlord" (the "***Original Landlord***") and Healthy Spot Alpha LLC, as "Tenant" (the "***Original Tenant***"), dated February 19, 2008, together with that certain Guaranty of Lease dated February 19, 2008, made by Andrew T. Kim and Mark Boonnark for the benefit of the Original Landlord, as amended by those certain (i) First Amendment to Shopping Center Lease Agreement dated March 1, 2013, by and between Carolyn E. Koenig and U.S. Bank, N.A., Co-Trustees, and Any Successor Trustees of the Survivor's Trust Created Under the Koenig Family Revocable Living Trust Date January 25, 1989, 40% Interest and Carolyn E. Koenig and U.S. Bank, N.A. Co-Trustees, and Any Successor Trustees of the Bypass Trust Created Under the Koenig Family Revocable Living Trust Date January 25, 1989, 40% Interest, as successor-in-interest to the Original Landlord (the "***Successor Landlord***") and Tenant, (ii) Second Amendment to Shopping Center Lease Agreement dated November 25, 2014, by and between the Successor Landlord and Tenant, and (iii) Third Amendment to Shopping Center Lease Agreement dated August 3, 2020, by and between Koenig Family Properties, LLC, as successor-in-interest to the Successor Landlord, and the Original Tenant, and that certain Assignment and Assumption of Lease Agreement dated [March 15], 2023, by and between the Original Tenant and Healthy Spot Operating, LLC.

10. **Studio City Lease:**

Lease Agreement between Allen C. Dennis, as Trustee of The Dennis Family Trust, as Landlord (the "***Original Landlord***"), and Healthy Spot ETA LLC, as Tenant (the "***Original Tenant***"), dated May 30, 2014, together with that certain Parking Lot Sub-License Agreement dated May 23, 2017, by and between Bruce Dennis and David Dennis, as Trustees of the Allen C. Dennis Revocable Living Trust under trust agreement dated May 14, 2015 and the Original Tenant, as amended by that certain First Amendment to Lease Agreement dated June 7, 2024, by and between Allen C. Dennis LLC, as successor-in-interest to the Original Landlord, and Healthy Spot Operating, LLC, as successor-in-interest to the Original Tenant.

11. **Silverlake Lease:**

Lease dated December 9, 2016, by and between Silver Ridge Plaza (the "***Landlord***") and Healthy Spot 011 LLC (the "***Original Tenant***"), together with that certain Guaranty dated December 16, 2026, made by Healthy Spot, LLC for the benefit of the Landlord, and that certain Assignment and Assumption of Lease Agreement dated March 15, 2023, by and between the Original Tenant and Healthy Spot Operating, LLC.

**12. West Hollywood Lease:**

AIR Commercial Real Estate Association Standard Industrial/Commercial Single-Tenant Lease-Net dated August 21, 2009, by and between Monte Overstreet (the "***Landlord***") and Healthy Spot Beta, LLC (the "***Original Tenant***"), together with that certain Addendum to Standard Industrial/Commercial Single-Tenant Lease-Net, as amended by those certain (i) Amendment No. 1 dated December 30, 2014, (ii) Amendment No. 2 dated February 4, 2020, and (iii) Amendment No. 3 dated June 23, 2020, each by and between Landlord and the Original Tenant, and that certain Assignment and Assumption of Lease Agreement dated March 15, 2023, by and between the Original Tenant and Healthy Spot Operating, LLC.

**13. Torrance Warehouse:**

Standard Industrial/Commercial Single-Tenant Lease-Net dated July 15, 2021, by and between Michael J. Quagletti Trust (the "***Landlord***") and Healthy Spot, LLC (the "***Original Tenant***"), together with that certain Addendum to Standard Industrial/Commercial Single-Tenant Lease-Net dated July 12, 2021, that certain Assignment and Assumption of Lease Agreement dated March 15, 2023, by and between the Original Tenant and Healthy Spot Operating, LLC, and that certain Sublease dated November 5, 2024, by and between Healthy Spot Operating, LLC, as successor-in-interest to the Original Tenant, and Broadata Communications, Inc.

## SCHEDULE C

**Vendor Contracts**

| Contracts | Cure Amount |
|---|---|
| Master Services Agreement for MyTime Point of Sale and Business Management System dated February 18, 2022, by and between Melian Lab Inc. dba MyTime and Healthy Spot LLC, prorated for Purchased Stores. | $0 |
| Agreements with Shopify, including the Master Subscription Agreement, the then-current Shopify Plus Agreement, and that certain 2024 Rate Lock Amendment dated April 16, 2024, by and between Shopify Inc. and Healthy Spot, LLC. | $0 |
| Agreement dated August 22, 2024, by and between Celigo, Inc. and Healthy Spot, together with those certain terms and conditions of the Celigo Terms of Service (available at https://www.celigo.com/terms-of-service/). | $0 |
| Ordering Document dated February 26, 2025, by and between Oracle America, Inc. and Healthy Spot LLC, for that certain Oracle Cloud Crowdtwist Services Agreement v062223. | $0 |
| National Rental Agreement dated April 1, 2021, together with that certain Customer Agreement Addendum dated October 5, 2022, by and between CINTAS Corporation No.2 and Healthy Spot LLC. | $0 |
| Box Service Order dated August 19, 2024, by and between Box, Inc. and Healthy Spot LLC, together with that certain Box Service Agreement. | $0 |
| Master Services Agreement dated April 14, 2016, by and between RetailNext, Inc. and Healthy Spot LLC, together with those Terms and Conditions attached thereto and those certain Renewal Quote Terms dated August 29, 2024. | $0 |
| On-Line Services Agreement dated November 17, 2024, by and between Information & Computing Services, Inc., and Healthy Spot, together with those certain ICS On-Line Services Agreement Terms and Conditions attached thereto. | $0 |
| Instacart Services Agreement dated as of September 2016, by and between Maplebear, Inc., doing business as Instacart, and Healthy Spot, LLC, together with those certain (i) Instacart Full Service Addendum dated as of September 2016, (ii) Shared End User | $0 |

| | |
|---|---|
| Data Addendum dated October 7, 2016, and (iii) Instacart Delivery Only Addendum dated October 7, 2016. | |
| Quote dated August 14, 2024, by and between Review Trackers, Inc. and Heathy Spot Operating, LLC, which is subject to that certain Master Service Agreement as published on Review Trackers' website, prorated for Purchased Stores. | $0 |
| Agreement with monday.com, including those certain Terms of Use of monday.com. | $0 |
| Agreement with Figma, including those certain Software Services Agreement and Terms of Services published on Figma's website. | $0 |
| Membership Agreement dated May 29, 2025 by and between Industrious LA Hughes District LLC and Healthy Spot, together with those certain Industrious Terms and Conditions. | $0 |
| Vehicle Lease Agreement dated May 31, 2023, by and between Healthy Spot Operating, LLC and Isuzu Finance of America, Inc. | $0 |
| **TOTAL** | **$0** |

**SCHEDULE D**

**Purchased Assets**

None.

# SCHEDULE E

## Excluded Assets

None.

# SCHEDULE F

## Assumed Payable

| Name | Description | Store/Area | Structured |
|---|---|---|---|
| Raw Connection Carmel | Purchase Note to Prior Ow ne | Carmel | $ 159,500.00 |
| 942 New co | Product Vendor | All Stores | $ 722,368.82 |
| 1330 Ziw ipeak | Product Vendor | All Stores | $ 140,668.66 |
| 189056 Clearmind Technology, Inc. | IT Support | All Stores | $ 78,819.86 |
| 190473 Cintas Corporation | Grooming Tow el Service | All Stores | $ 64,350.87 |
| 1208 Primal Pet Foods | Product Vendor | All Stores | $ 62,520.48 |
| 26 Pet Food Experts | Product Vendor | All Stores | $ 52,077.23 |
| 1211 Pure Dog Food | Product Vendor | All Stores | $ 34,917.60 |
| 603 Maplebear Inc* | Instacart Vendor | All Stores | $ 34,249.63 |
| 1214 Raw Advantage Processing | Private Label Freeze Dried | All Stores | $ 29,246.00 |
| 251885 Mor Air Inc | HVAC & Freezer Maintenan | SoCal | $ 26,875.95 |
| 251498 Odecloud Inc. | System Integration Develope | All Stores | $ 24,595.31 |
| 18 The Honest Kitchen | Product Vendor | All Stores | $ 21,438.99 |
| 976 Artvark Pet Products | Product Vendor | All Stores | $ 19,771.10 |
| 252003 Pacific Western Container | Warehouse Storage Contain | Warehouse | $ 18,455.68 |
| 1271 The Foggy Dog | Product Vendor | All Stores | $ 17,541.00 |
| 251905 Digital Marketing Consulting Grou | Digital Marketing Company | All Stores | $ 11,867.11 |
| 190437 Celigo, Inc. | System Integrator | All Stores | $ 11,375.00 |
| 384 Prime Graphix Inc. | Marketing Material Print Vend | All Stores | $ 10,228.02 |
| 251671 Phillips Pet Food Supplies | Product Vendor | All Stores | $ 10,059.27 |
| 251579 Oracle America, Inc. (Crow dtw is | Loyalty Program | All Stores | $ 10,000.05 |
| 251996 Lambw olf Collective | Product Vendor | All Stores | $ 9,353.25 |
| 190059 Michael Arizola | Website Developer | All Stores | $ 8,735.61 |
| 4 Jax & Bones | Product Vendor | All Stores | $ 8,507.00 |
| 189806 Fortis LLP | Chapter 11 HS Attorneys | All Stores | $ 7,910.00 |
| 190155 Red Security Group LLC | Locksmith | All Stores | $ 7,049.35 |
| 190591 Umland LLC | Private Label Cheese Puff | All Stores | $ 6,193.75 |
| 1479 Evermore Pet Food, Inc | Product Vendor | All Stores | $ 5,554.00 |
| 1161 Yosemite Protein Products Inc. | Private Label Bone Broth | All Stores | $ 4,216.00 |
| 190537 Diggs, Inc | Product Vendor | All Stores | $ 4,150.30 |
| 251888 Doordash G&C LLC | Doodash Vendor | All Stores | $ 4,034.75 |

| | | | | |
|---|---|---|---|---|
| 251969 Firstlight Foods USA Inc. | Product Vendor | All Stores | $ | 3,891.20 |
| 189999 Prime Refrigeration Systems, Inc* | Freezer Repair Service | SoCal | $ | 3,741.56 |
| 251679 Groomers Friend LLC | Grooming Equip Repair Servi | All Stores | $ | 3,092.76 |
| 251667 Roadogs & Rescue | Rescue | All Stores | $ | 3,005.78 |
| 251860 BNG Miracle Pet LLC | Product Vendor | All Stores | $ | 2,883.78 |
| 251877 Paw s of L.A. Rescue | Rescue | SoCal | $ | 2,738.53 |
| 190240 Sage Law Partners | Lease Counsel (assignments | All Stores | $ | 2,679.95 |
| 251831 Margarita R.D Cleaning | Cleaning Service | Carmel | $ | 2,400.00 |
| 251530 Los Angeles LGBT Center | Rescue | All Stores | $ | 2,320.64 |
| 1184 Petipet | Product Vendor | All Stores | $ | 2,292.32 |
| 251972 I Stand With My Pack | Rescue | All Stores | $ | 2,046.29 |
| 251896 Peace of Mind Dog Rescue | Rescue | All Stores | $ | 2,021.49 |
| 251992 A Purposeful Rescue | Rescue | All Stores | $ | 1,920.59 |
| 368 Forte Animal Rescue | Rescue | All Stores | $ | 1,583.00 |
| 189506 The Rescue Train | Rescue | All Stores | $ | 1,524.35 |
| 1448 Karma Cat Inc | Product Vendor | All Stores | $ | 1,400.88 |
| 251856 Dandylion | Product Vendor | All Stores | $ | 1,355.12 |
| 251447 Berkeley Humane | Rescue | Berkeley | $ | 1,202.39 |
| 189989 Bel Air Internet, LLC | Internet Service | Warehouse | $ | 1,180.00 |
| 190667 RetailNext* | Store Traffic Counter | All Stores | $ | 1,083.35 |
| 251974 Independent Pet Supply | Product Vendor | All Stores | $ | 1,010.57 |
| 1141 Natural Dog Company | Product Vendor | All Stores | $ | 919.72 |
| 189613 American City Pest & Termite | Pest Control | SoCal | $ | 801.50 |
| 251657 Project Hive | Product Vendor | All Stores | $ | 788.40 |
| 251965 NorCal Sled Dog Rescue | Rescue | Berkeley | $ | 648.40 |
| 251455 Muttville Senior Dog Rescue | Rescue | All Stores | $ | 283.43 |
| 251485 Rocket Dog Rescue | Rescue | All Stores | $ | 189.55 |
| 1165 Pan Pacific | Paper Bags | All Stores | $ | 3,628.00 |
| Snif - Snax | Private Label Manufacturer | All Stores | $ | 87,105.00 |
| Halshan Premium Food | Raw Food | Carmel | $ | 8,275.00 |
| Feed This, Inc | North Berkeley Only Food | Berkeley | $ | 331.22 |
| Adored Beast | Product Vendor | All Stores | $ | 812.75 |
| | | | | |
| | | | | |
| **Totals** | | | **$** | **1,775,788.16** |

## SCHEDULE G

**Lease Cures**

| **Store Lease** | **Amount of Lease Cure** |
|---|---|
| Carmel Lease | $1,375.51 |
| Costa Mesa Lease | $0.00 |
| Long Beach Lease | $1,967.15 |
| Marina Del Rey Lease | $0.00 |
| North Berkeley Lease | $7,342.07 |
| Pasadena Lease | $7,863.49 |
| Playa Vista Lease | $3,390.28 |
| Rockridge Lease | $1,103.11 |
| Santa Monica Lease | $3,084.00 |
| Studio City Lease | $0.00 |
| Silverlake Lease | $1,524.00 |
| West Hollywood Lease | $2,204.53 |
| Torrance Warehouse Lease | $0.00 |
| **TOTAL** | $29,854.14 |

# SCHEDULE H

## Allocation of Consideration

| Description | Value |
|---|---|
| Cash | $ 950,000.00 |
| Assumed Payables | $ 1,775,788.16 |
| Assumed Lease Amortization | $ 497,511.64 |
| Assumed PTO | $ 215,514.00 |
| Credit Bid | $ 2,876,344.20 |
| ***Total*** | ***$ 6,315,158.00*** |

**SCHEDULE I**

**Closing Stores**

1. Beverly Grove at 8126 Beverly Blvd, Los Angeles, CA 90048
2. Mission Bay at 1200 4th St Suite F, San Francisco, CA 94158
3. Culver City at 8809 Washington Blvd Suite 126, Culver City, CA 90232
4. Downtown Los Angeles at 1000 S Grand Ave A, Los Angeles, CA 90015
5. Century City at 10250 Santa Monica Blvd Suite 2580, Los Angeles, CA 90067
6. Topanga at 6320 CA-27 #1635, Woodland Hills, CA 91367

Docusign Envelope ID: 986DF735-FC7E-408C-BA4C-6B5C6F46ECCA

# FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT

THIS FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT (this "***Amendment***"), dated effective as of July 25, 2025 (the "***Effective Date***"), is entered into by and among by and among Pet Pros, LLC, a Washington limited liability company ("***Pet Pros***"), NPM Franchising, LLC, a Washington limited liability company ("***NPM***", and together with Pet Pros, collectively, "***Buyer***"), and Healthy Spot Operating, LLC, a Delaware limited liability company ("***Seller***").

**WHEREAS**, Buyer and Seller entered into an Asset Purchase Agreement (the "***Purchase Agreement***") dated July 10, 2025, pursuant to which Buyer has agreed to acquire and assume from Seller, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Purchased Assets (as defined in the Purchase Agreement) and the Assumed Liabilities (as defined in the Purchase Agreement); and

**WHEREAS**, the parties desire to amend the Purchase Agreement on the terms and subject to the conditions set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Definitions**. Capitalized terms used and not defined in this Amendment have the respective meanings assigned to them in the Purchase Agreement.

2. **Amendments to Purchase Agreement**. The Purchase Agreement is hereby amended and modified as follows:

(a) *Consideration*. Section 4.1(a) of the Purchase Agreement is hereby amended and restated in its entirety as follows: "(a) a credit bid in the amount $2,876,334.20 or such other amount consisting of Buyer's ACH/TVT Claims;".

(b) *Vendor Contracts*. The Vendor Contract listed in Schedule C of the Purchase Agreement described as "Ordering Document dated February 26, 2025, by and between Oracle America, Inc. and Healthy Spot LLC, for that certain Oracle Cloud Crowdtwist Services Agreement v062223." is hereby amended and restated in its entirety as follows:

| | |
|---|---|
| Ordering Document dated February 26, 2025, by and between Oracle America, Inc. and Healthy Spot LLC, for Oracle CrowdTwist Cloud Service, in connection with and in addition to that certain Oracle Cloud Services Agreement v062223. | $0 |

3. **Effect of This Amendment**. Except as expressly provided in this Amendment, all of the terms and provisions of the Purchase Agreement referenced herein are and will remain in full force and effect. On and after the date hereof, each reference in the Purchase Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein" or words of like import, and each reference to the Purchase Agreement in any other agreements, documents, or instruments executed and delivered pursuant to, or in connection with, the Purchase Agreement, will mean and be a reference to the Purchase Agreement as amended by this Amendment.

4. **Miscellaneous**.

(a) *Governing Law; Submission to Jurisdiction; Waiver of Jury Trial*. This Amendment shall be governed by and construed in accordance with Section 12 of the Purchase

Docusign Envelope ID: 986DF735-FC7E-408C-BA4C-6B5C6F46ECCA

Agreement.

(b) *Headings*. The headings in this Amendment are for reference only and shall not affect the interpretation of this Amendment.

(c) *Counterparts*. This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Amendment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Amendment.

[SIGNATURES ON FOLLOWING PAGE]
[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Docusign Envelope ID: 986DF735-FC7E-408C-BA4C-6B5C6F46ECCA

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be executed as of the date first written above by their duly authorized officers or representatives.

**SELLER:**

**HEALTHY SPOT OPERATING, LLC**

By: DocuSigned by: [signature] 4D889A820352452...
Name: Mark Boonnark
Title: CEO

**BUYER:**

**PET PROS, LLC**

By: DocuSigned by: Michael Seitz E93AE27BEC4C444...
Name: Michael Seitz
Title: CEO

**NPM FRANCHISING, LLC**

By: DocuSigned by: Michael Seitz E93AE27BEC4C444...
Name: Michael Seitz
Title: CEO

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **EXHIBIT “A” TO ORDER (1) AUTHORIZING SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (2) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES AND CONTRACTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 29, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jonathan Arias bknotices@zwickerpc.com
- Jamie Altman Buggy jbuggy@harvestllp.com, jkeatingwolk@harvestllp.com,atenreiro@harvestllp.com
- Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- Ivo Keller ikeller@sflaw.com, calendar@sflaw.com
- Sweeney Kelly kelly@ksgklaw.com
- Elizabeth S Lynch blynch@chinnery.com
- Noreen A Madoyan Noreen.Madoyan@usdoj.gov
- Stephen Malkiewicz stephen.malkiewicz@cintas.com
- Jean Pierre Nogues jpn@msk.com
- Dean G Rallis drallis@hahnlawyers.com, jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com;crogers@hahnlawyers.com;acastillo@hahnlawyers.com
- Abe G Salen asalen@wzllp.com, kmartin@wzllp.com,ddouglas@wzllp.com,akaderbarek@wzllp.com
- Daren M Schlecter daren@schlecterlaw.com, assistant@schlecterlaw.com
- Gary A Starre gastarre@gmail.com, mmoonniiee@gmail.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **July 29, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** <u>(state method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 29, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 29, 2025 | D. Woo | */s/ D. Woo* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |